NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11919

COMMONWEALTH vs. ROBERT E. WHITE.

Plymouth.     February 9, 2016. - October 19, 2016.

Present: Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]


Rape. Limitations, Statute of. Evidence, Indictment, Corroborative evidence, Prior misconduct. Practice, Criminal, Indictment, Instructions to jury.


Indictment found and returned in the Superior Court Department on October 3, 2008.

The case was tried before Richard J. Chin, J.

The Supreme Judicial Court granted an application for direct appellate review.


Kathryn Hayne Barnwell for the defendant.
Robert C. Thompson, Assistant District Attorney, for the Commonwealth.


LENK, J. The defendant was convicted in 2014 of one count

of rape of a child, G. L. c. 265, § 23. The underlying

_____

[1] Justices Spina, Cordy, and Duffly participated in the deliberation on this case prior to their retirements.

indictment, returned in 2008 and amended in 2014, alleged that he had raped his daughter on "diverse dates" between September 29, 1979, and 1981, when she was between four and six years old. On appeal, the defendant chiefly raises two sets of claims, both of which concern the statute of limitations, G. L. c. 277, § 63. First, he argues that the Commonwealth did not meet its burden at trial of proving beyond a reasonable doubt that the indictment was timely brought, and, in addition, that the trial judge incorrectly instructed the jury as to that issue. Second, he maintains that, even if the indictment were timely brought, the Commonwealth failed to provide the requisite independent corroboration of any incidents of rape that occurred more than twenty-seven years before the indictment was returned. See G. L. c. 277, § 63. He maintains, in this regard, that the corroboration provided by the Commonwealth at trial -- consisting exclusively of evidence of uncharged sexual misconduct -- was insufficient. He argues also that the judge failed to instruct the jury as to the corroboration requirement.

We conclude, with respect to the first set of issues, that the Commonwealth presented sufficient evidence from which the jury could determine, beyond a reasonable doubt, that the indictment was timely returned. We also conclude, however, that the jury instruction concerning how to make this determination was incorrect, that the erroneous instruction precluded the jury

from properly ascertaining whether the indictment was timely, and that the incorrect instruction resulted in a substantial risk of a miscarriage of justice. Accordingly, on this basis alone, the defendant's conviction must be vacated and set aside.

In considering the second set of claims, we construe for the first time the requirement that a conviction of certain sex offenses against children, if based on an indictment returned more than twenty-seven years after the offense, must be supported by independent, corroborating evidence. See G. L. c. 277, § 63. We conclude that the corroboration must relate to the specific criminal act or acts of which a defendant is accused, and that evidence of uncharged misconduct does not suffice. Here, most -- although not all -- of the incidents of rape to which the victim testified took place more than twenty-seven years before the indictment was returned, and therefore required corroboration. Because there is a significant possibility that the jury's general verdict was based only on the incidents requiring corroboration, and because the Commonwealth's corroborative evidence -- consisting only of evidence of uncharged misconduct -- was insufficient as a matter of law, the defendant's conviction must be vacated on this basis as well. On remand, should the Commonwealth decide to pursue a new trial, the defendant may be tried only for those incidents

that took place after October 3, 1981, for which corroboration was not required as a matter of law.

1. <u>Background</u>. a. <u>Abuse</u>. We recite the evidence presented at trial, reserving certain details for later discussion. In 1974, the defendant married J.G.C., and adopted her four-year-old son, S.G. The following year, the defendant and J.G.C. had a daughter, S.F. Between the time of the marriage and October, 1981, the family lived together in eight different places, most in the general vicinity of Wareham. The last three locations, which are relevant to this appeal, were in Wareham, where they moved toward the end of 1978 or the beginning of 1979; in West Wareham, where they moved sometime in 1980; and in Onset, where they moved in September, 1981.

S.F. testified that the defendant had sexually abused her on numerous occasions beginning in 1979, when the family lived in Wareham. She stated that the defendant "would come into my room at night," and then "take off my pajamas and touch me down in my private areas" using his "fingers[ and] his mouth." This happened "a few times a week." When the family moved to West Wareham, sometime in 1980, the defendant would come into her bedroom and "do the same thing" "a few times a week." S.F. added that "if I tried to stop him, he would smack me" and "tell

me that this is how a father shows his daughter love, that we have a secret and I can't tell."[2]

In September, 1981, the family moved to Onset. S.F. did not testify about any incidents of abuse at that location. Her brother, however, testified that he was once walking past S.F's room at the Onset house, and "saw [the defendant] on top of her, his head in her lap, her on the bed"; S.F. was "laying back" and "her pants were down."

Sometime in September or October, 1981, when S.F. was six years old and the family was living in Onset, J.G.C. was sitting outside the house when "all of a sudden [she] just had a feeling over [her] . . . dread almost." She "ran in the house," opened the door to S.F.'s room, and saw the defendant inside the room with her. The defendant said, "We're cleaning the room." J.G.C. had not previously seen the defendant help S.F. clean her room with the door closed. J.G.C. then took S.F. "out for a car ride" for approximately "an hour." S.F. testified that, during this ride, J.G.C.

> "was asking me . . . Do you have something to tell me? Is there something you would like to tell me? And she would, you know, rephrase that particular question over and

---

[2] S.F. also mentioned a "very prominent memory of" abuse at her "grandmother's house" in Wareham, which took place when she was "about four." She said that the defendant followed her into an upstairs bathroom, "put me up onto the sink and . . . performed oral sex on me" by putting "his mouth on my vagina." Afterward, "he put my clothes back on and told me to go downstairs."

over. And the only thing I ever wound up disclosing was that I had a secret with my father and I couldn't tell anybody."

Shortly after this incident, in October, 1981, the defendant and J.G.C. separated and, ultimately, divorced. The defendant moved to an apartment in Wareham, where he lived for "at least a couple of years." S.F. testified that she visited the defendant there on a number of occasions, and that "[w]henever I was sleeping, he would come into the room," "take off my pants," and "touch my vagina" with "[h]is fingers or his tongue."

Soon after moving to the Wareham apartment, the defendant began dating another woman. This woman moved in with the defendant, and they eventually married. The two left the Wareham apartment at some point in 1984 or 1985, moving first to Haverhill and then to New Hampshire. Through 1988, S.F. and her brother would periodically visit the defendant in New Hampshire. In addition, when S.F. was "sixteen, seventeen," in 1991 and 1992, she "started visiting [her] grandparents" in New Hampshire during "the summertime," and the defendant sometimes "came to the house" during those visits.

b. Disclosures and trial. In April, 2008, when S.F. was thirty-two years old, she gave a statement to police alleging

that the defendant had abused her when she was a child.[3]
Thereafter, a Plymouth County grand jury heard testimony from
S.F. regarding the abuse, which was said to have taken place
between 1977 and 1981.[4]  In addition, they heard testimony from
her brother, who alleged that the defendant also had abused him
on various occasions between 1973 and 1985.[5]  On October 3, 2008,
a grand jury returned four indictments relating to the alleged
abuse of S.F.,[6] and eight related to the alleged abuse of the
brother.[7]  Following a pretrial motion to dismiss on the basis,

---

[3] S.F. previously had disclosed the abuse to J.G.C.  This
happened in 1988, when S.F. was approximately thirteen years
old.  At that time, J.G.C. "asked her if she wanted to pursue it
and [S.F.] said no."

[4] No accounts of the pre-1979 abuse, which was determined to
be time barred, are in the record.

[5] The grand jury also heard testimony from the defendant's
niece, who alleged that the defendant abused her on various
occasions between 1972 and 1978, and from J.G.C., who alleged
that the defendant had raped her sometime in 1974 or 1975, when
she was married to him.  Indictments were returned on the basis
of this testimony.  However, the indictment concerning the niece
was dismissed as time barred before trial, and that concerning
J.G.C. was dismissed as time barred during trial.

[6] These included one count of rape of a child by force,
G. L. c. 265, § 22A, and three counts of indecent assault and
battery, G. L. c. 265, § 13B.

[7] These included three counts of rape of a child by force,
G. L. c. 265, § 22A; two counts of assault and battery on a
person under fourteen years of age, G. L. c. 265, § 13B; one
count of assault and battery, G. L. c. 265, § 13A; one count of
assault and battery by means of a dangerous weapon, G. L.
c. 265, § 15A (b); and one count of threatening to commit a
crime, G. L. c. 275, § 2.

among other things, of the statute of limitations, a judge of the Superior Court dismissed as time barred three of the four indictments relating to abuse of S.F. The judge denied the defendant's motion to dismiss a fourth count -- for rape of a child by force, G. L. c. 265, § 22A -- relating to abuse of S.F., and he also declined to dismiss the eight counts relating to abuse of the brother.

In March, 2014, a trial on the remaining indictments was held before a Superior Court jury. The Commonwealth presented testimony from S.F. regarding abuse that she suffered; from her brother, both regarding abuse that he suffered, and in corroboration of S.F.'s testimony; and from J.G.C., as the first complaint witness.[8] Because the Commonwealth was required also to prove that the charges were not barred by the statute of limitations, see Commonwealth v. Shanley, 455 Mass. 752, 781 n.37 (2010) ("Commonwealth has the burden of proving beyond a reasonable doubt that the indictments have been timely brought"), it presented evidence that the defendant resided outside of Massachusetts during the relevant limitations period,[9]

---

[8] Pursuant to a separate indictment, J.G.C. testified about an incident in which the defendant raped her. That indictment was, as mentioned, dismissed in the middle of the trial as time barred, and did not go to the jury.

[9] The relevant limitations period with respect to most of the acts in question was fifteen years, to run from the victim's

and that, accordingly, the statute had been tolled.  See G. L.
c. 277, § 63 (statute tolled if defendant "not usually and
publicly a resident" of Massachusetts).  This evidence consisted
of testimony from S.F., S.G., and J.G.C. about the defendant
residing in New Hampshire, and of a 2009 report from the New
Hampshire Division of Motor Vehicles, admitted over objection,
showing that the defendant had a New Hampshire driver's license
and maintained an address in that State.

There were two theories of defense.  First, the defendant
contended that S.F.'s memories of abuse were false, being the
result of suggestive questioning by J.G.C.  In this regard, the
defendant offered expert testimony from a psychiatrist who
opined that, under certain circumstances, such as suggestive
questioning by an adult, children may develop vivid memories of
events they never actually experienced.  The defendant also
presented a statement of stipulated facts regarding certain
comments that S.F. made to a Department of Social Services
(DSS)[10] employee in 2004, which the defendant argued were
inconsistent with S.F.'s testimony at trial.  The second theory
of defense was that the Commonwealth had not met its burden of

---

sixteenth birthday.  See G. L. c. 277, § 63, as amended by
St. 1996, c. 26.  The victim turned sixteen in 1991.

[10] This was before the change of the department's name to
the Department of Children and Families in 2008.  See St. 2008,
c. 176, § 136.

demonstrating that the statute of limitations had been tolled and that the indictments were timely brought.

The jury returned a guilty verdict on the single indictment relating to abuse of S.F., on the lesser included offense of rape of a child.  See G. L. c. 265, § 22A.  The jury returned verdicts of not guilty on the remaining indictments, which related to abuse of her brother.

2.  Discussion.  On appeal, the defendant raises two sets of claims related to the statute of limitations, G. L. c. 277, § 63.  First, the defendant contends that the Commonwealth did not present sufficient evidence that the indictment on which he was convicted was returned within the relevant limitations period.  He claims also that, even if the evidence on this point was sufficient, the jury were not instructed properly how to determine, on the basis of this evidence, whether the indictment was timely.

Second, even if the indictment was timely brought, it is undisputed that the Commonwealth was required, pursuant to G. L. c. 277, § 63, to provide independent corroboration of any incidents of rape alleged to have occurred more than twenty-seven years before the indictment was returned.  The defendant contends that the Commonwealth failed to provide sufficient corroboration of such alleged incidents, and, in addition, that the judge declined to instruct the jury, notwithstanding the

defendant's request, regarding the Commonwealth's obligation to provide this evidence.

The defendant also raises four additional claims, three of which are evidentiary in nature, and one of which relates to whether the Commonwealth proved certain details listed in the indictment.

a.  Timeliness of indictment.  At the time of the alleged offenses at issue, between 1979 and 1981, the statute of limitations for rape of a child was six years.  See R. L. 1902, c. 218, § 52.  The Legislature subsequently has lengthened the relevant limitations period several times.[11]  It is undisputed, except with regard to the last of these changes, that each modification occurred before the limitations clock had an opportunity to expire.  See Stogner v. California, 539 U.S. 607, 632 (2003) (under Constitution's ex post facto clause, limitations period may be lengthened retroactively, but not if already expired).  The contested issue in this case is whether the most recent modification, like the previous ones, took

_____

[11] Effective September 30, 1985, the limitations period was extended to ten years.  See St. 1985, c. 123.  In 1987, the statute was changed so that the ten-year period would begin to run only from the victim's sixteenth birthday.  St. 1987, c. 489.  In 1996, the limitations period was extended to fifteen years, to run from the victim's sixteenth birthday.  St. 1996, c. 26.  Effective December 20, 2006, the limitations period was lifted entirely.  St. 2006, c. 303, § 9 (no limitations, but indictment returned more than twenty-seven years after offense requires "independent evidence that corroborates the victim's allegation").

effect before the limitations clock had an opportunity to expire. See St. 2006, c. 303, § 9.

Prior to December 20, 2006, the statute of limitations for rape of a child was fifteen years, to run from the victim's sixteenth birthday. G. L. c. 277, § 63, as amended by St. 1996, c. 26. Because the victim turned sixteen on August 19, 1991, that limitations period would have expired fifteen years later, on August 19, 2006. This would have happened 123 days before December 20, 2006, when the Legislature entirely abolished the statute of limitations for rape of a child. See St. 2006, c. 303, § 9. The Commonwealth contends, however, that the limitations clock did not expire on August 19, 2006, because the defendant lived in New Hampshire during the period that the limitations clock was running, i.e., between August 19, 1991, and August 19, 2006, thereby tolling the statute. See G. L. c. 277, § 63 ("period during which the defendant is not usually and publicly a resident within the commonwealth shall be excluded").

To prove this claim at trial, the Commonwealth was required to show beyond a reasonable doubt that, during the period that the statute was running (between August 19, 1991, and August 19, 2006), the defendant was "not usually and publicly a resident" of Massachusetts for at least 123 days, i.e., for the length of time between the victim's birthday on August 19, 2006 (when the

limitations clock would have run under the old statute) and December 20, 2006 (when the Legislature abolished the limitations period).[12]  See Commonwealth v. Shanley, 455 Mass. at 781 n.37 (Commonwealth's burden to show indictment timely brought).  The defendant claims that the Commonwealth's evidence on this point was insufficient and amounted only to "speculation."

This claim fails.  There was evidence that the defendant remarried, and that he moved with his new wife to New Hampshire sometime in the late 1980s.  There was evidence also that the defendant's parents moved to New Hampshire soon thereafter; that S.F. and her brother visited the defendant in New Hampshire at various times through 1988; that, in the summers of 1991 and 1992, the defendant was seen stopping by his parents' house in New Hampshire when S.F. was there; and that, in 2009, he had a New Hampshire driver's license listing an address in that state.  See Commonwealth v. George, 430 Mass. 276, 277 (1999) (limitations period tolled when defendant resided out of State).

---

[12] We do not accept the defendant's claim that, because the trial judge erroneously instructed the jury that it needed to find 777 days of tolling, rather than four months, see infra, this higher number controls for purposes of our sufficiency review.  Commonwealth v. David, 365 Mass. 47, 55-56 (1974) (misstatement of burden in defendant's favor did not become "the law of the case" where "the judge made his ruling not at the close of the Commonwealth's case but at the close of all the evidence," and where, accordingly, there was no indication that defendant's strategy at trial was affected by this mistake).

Given this, the jury reasonably could have inferred that, after the defendant moved to New Hampshire in the 1980s, he continued to live there until at least the summer of 1992, which is, of course, more than 123 days after S.F.'s August 19, 1991 birthday.[13]  See Commonwealth v. Mazariego, 474 Mass. 42, 46 (2016) (inferences drawn by jury need only "be reasonable and possible" [citation omitted]).  Thus, the Commonwealth's evidence of tolling was sufficient.

     b.  Erroneous instruction on tolling.  The judge gave the following instruction on how to determine whether the indictment was timely brought:

> "[T]he statute of limitations began to run on August 19, 1991, and would have expired on August 19, 2006. However, our statute further provides that certain time may be excluded from this calculation and states:  any period during which the defendant is not usually and publicly a resident within the Commonwealth shall be excluded from determining this period.  Because those indictments were brought in 2008, 777 days after the expiration of the statute of limitations, the Commonwealth must prove beyond a reasonable doubt that between August 19, 2006, and the date of the indictment, that the defendant was not a resident of Massachusetts for at least 777 days."

---

[13] Our decision in Commonwealth v. Shanley, 455 Mass. 752, 780 (2010), is not to the contrary.  There, we held that the statute of limitations may be tolled only by a defendant's out-of-State residence during the limitations period, and not by such residence before the limitations period begins or after it expires.  Id. at 779-780.  We did not say, however, as the defendant contends, that evidence of where a defendant lived before or after the limitations period is irrelevant to proving where he lived during the limitations period.  Id. at 778-780 (evidence that defendant lived out of State beginning in 1990 probative of where he lived when limitations clock began to run in September, 1993).

In other words, the jury were instructed to determine whether the defendant was "not usually and publicly a resident" of Massachusetts between S.F.'s birthday on August 19, 2006, and October 3, 2008, the date of the indictment. See G. L. c. 277, § 63. Both parties agree that this was error, since, if tolling had not taken place by August 19, 2006, the limitations period would have run, and any tolling thereafter would be irrelevant. See Commonwealth v. Shanley, 455 Mass. at 780 ("instruction should have focused the jury's attention only on the defendant's usual and public residence during the period" when the statute was running). The defendant, however, did not object to this instruction, and we therefore must determine whether it resulted in a "substantial risk of a miscarriage of justice." See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

To decide whether an erroneous jury instruction created a substantial risk of a miscarriage of justice, "[w]e examine the jury instructions in their entirety 'to determine their probable impact on the jury's perception of the fact-finding function.'" Commonwealth v. Noble, 429 Mass. 44, 47 (1999), quoting Commonwealth v. Mejia, 407 Mass. 493, 495 (1990). Here, the erroneous instruction was the jury's sole opportunity to hear an explanation of the statute of limitations, and, as given, it told the jury to focus on a period when the limitations clock

was not running and during which no tolling could have taken place. Given this instruction, there was no way the jury could have made the necessary finding whether the statute of limitations was tolled during the interval between August 19, 1991, and August 19, 2006. In effect, the jury never had the opportunity to ascertain whether the indictment was timely. This "deprived [the defendant] of jury consideration of a substantial part of his defense"[14] and "created a substantial risk of a miscarriage of justice.[15] See Commonwealth v. Noble,

---

[14] The claim that the Commonwealth did not provide sufficient evidence of tolling was, as discussed supra, one of defendant's two primary theories of defense, and was argued at length by defense counsel during closing arguments. Contrast Commonwealth v. Shanley, supra at 782 (erroneous instruction on tolling did not require reversal where, among other things, issue not argued in closing by defense).

[15] The Commonwealth argues that the defendant's failure to object to the erroneous instruction was the result of a strategic decision, because the judge's error required the jury to find more days of tolling (777 days) than would have been required under a correct statement of the law (123 days). See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (appellate court considers whether "counsel's failure to object was not simply a reasonable tactical decision" [citation omitted]). There was no evidentiary hearing on the issue, and the record before us does not support this contention. We note that the erroneous instruction would not necessarily be to the defendant's advantage, as it focused the jury's attention on a two-year window (2006-2008) close to 2009, when it was shown, via the defendant's New Hampshire driving record, that he maintained an address in that State. Arguably, it would have been more to the defendant's advantage for the instruction to focus on the period between 1991 and 2006, during which there was no direct evidence that the defendant maintained a New Hampshire address. In addition, the record suggests that both the judge and the parties found the issue of tolling to be difficult and

_supra_ at 47 (instruction omitted on affirmative defense that was supported by evidence).  Accordingly, the defendant's conviction must be vacated.

c.  _Corroboration_.  i.  _Sufficiency of corroboration_. General Laws c. 277, § 63, as amended by St. 2006, c. 303, § 9, provides that an indictment for rape of a child

> "may be found and filed at any time after the date of the commission of such offense; but any indictment or complaint found and filed more than [twenty-seven] years after the date of commission of such offense shall be supported by independent evidence that corroborates the victim's allegation.  Such independent evidence shall be admissible during trial and shall not consist exclusively of the opinions of mental health professionals" (emphasis supplied).

Here, the defendant was convicted on the basis of an indictment returned on October 3, 2008.  Thus, pursuant to G. L. c. 277, § 63, S.F.'s allegations with respect to any incidents taking place before October 3, 1981 -- i.e., more than twenty-seven years prior to indictment -- required corroboration by independent evidence.[16]

---

confusing.  It appears at least as likely that neither counsel realized that an error had been made.  Finally, there is evidence that the defendant objected to other parts of the jury instructions on the statute of limitations, and "[w]e can see no valid tactical reason for challenging some instructions but not others."  See _Commonwealth_ v. _Randolph_, 438 Mass. 290, 299 (2002).

[16] As discussed _infra_, the judge did not give an instruction on the issue of corroboration.

At trial, S.F. testified to various incidents of rape, some occurring before October 3, 1981, and some after.[17]  The jury, however, returned a general verdict that did not specify whether the defendant was convicted on the basis of the pre-October 3, 1981, incidents, which required corroboration, or those that took place later, for which corroboration was not necessary. Because we do not know the basis for the jury's verdict, the defendant's conviction may be affirmed only if there was corroboration of the pre-October 3, 1981, incidents, as those might have formed the sole basis for the jury's verdict.[18,19]

---

[17] The incidents before October 3, 1981, were those in the family's homes in Wareham and West Wareham, as well as at the grandparents' house in Wareham.  The incidents after this date were those that took place in the Wareham apartment to which the defendant moved in October, 1981, after separating from J.G.C.

[18] The judge correctly instructed the jury that "[y]ou may find the defendant guilty only if you unanimously agree that the Commonwealth has proven beyond a reasonable doubt that the defendant committed the offense on at least one specific occasion."  Thus, the jury might unanimously have agreed that the defendant committed rape on one specific occasion before October 3, 1981, and might not unanimously have agreed regarding other dates.

[19] The Commonwealth contends that this claim was waived. Even if this were so, most of the acts to which S.F. testified required corroboration, and, accordingly, there was a significant possibility that the jury convicted on the basis of those acts, resulting in a substantial risk of a miscarriage of justice to the extent that the Commonwealth's corroboration was insufficient.  See Commonwealth v. Kelly, 470 Mass. 682, 701 (2015) (substantial risk of miscarriage of justice if, because of improper instruction, "there is any significant possibility that the jury may have based convictions" on impermissible factual grounds).

Commonwealth v. Sanchez, 405 Mass. 369, 382 (1989) (judgment vacated because "jury may well have convicted" on impermissible basis, despite presence of permissible basis [citation omitted]). See also Commonwealth v. Petrillo, 50 Mass. App. Ct. 104, 111 (2000), cert. denied, 532 U.S. 1030 (2001).

Accordingly, we must determine whether S.F.'s testimony with respect to the pre-October 3, 1981, acts was supported by "independent evidence that corroborates [her] allegation." G. L. c. 277, § 63. In support of its assertion that there was independent corroboration, the Commonwealth points to the testimony of S.F.'s brother that, sometime in September, 1981, when the family lived in Onset, he once saw the defendant reclining next to S.F. with his head in her lap, while she lay on her bed with "her pants . . . down." The question before us is whether this was sufficient corroboration within the meaning of the statute. In answering this question, we construe for the first time the phrase "independent evidence that corroborates the victim's allegation." Id.

The issue presented by the brother's account, as both parties recognize, is that it did not coincide precisely with any of the incidents to which the victim testified: S.F.'s testimony with respect to the pre-October 3, 1981, acts spoke of abuse that took place when the family lived in Wareham and West Wareham, while her brother described an incident that happened

later, when the family lived in Onset.[20]  In this way, the brother's testimony presented evidence of uncharged sexual misconduct.[21]  The Commonwealth argues that the statute's corroboration requirement may be satisfied by such evidence, which, in its view, "tends to support the conclusion that the crime described . . . actually occurred."  The defendant, on the other hand, argues that proof of uncharged misconduct does not suffice because there must be evidence "corroborating each specific allegation" made by the victim.  For the reasons that follow, we conclude that the Commonwealth must present corroborating evidence that relates to the specific criminal act at issue.  Consequently, evidence of uncharged misconduct, such as that presented by the brother, does not itself suffice.

As with all statutes, G. L. c. 277, § 63, "must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be

---

[20] These locations are not elements of the crime. Nonetheless, in conjunction with evidence of when the family lived in these locations, they allow for a determination of the approximate time that the incidents of rape took place.

[21] There is no contention that the brother's testimony formed an independent basis for conviction, as it did not contain sufficient detail to demonstrate that the defendant committed rape of a child.  Commonwealth v. King, 445 Mass. 217, 222 (2005), cert. denied, 546 U.S. 1216 (2006) (must be "some degree of penetration" by or of sexual organs).

remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Commonwealth v. Clark, 472 Mass. 120, 129 (2015), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).

Based on the statutory language, it is clear that the victim's testimony alone is not enough to sustain a conviction. G. L. c. 277, § 63 (evidence must be "independent"). It also is clear that the required corroboration may not consist "exclusively of the opinions of mental health professionals" and that it must be of a sort "admissible during trial." Id. The Legislature, however, did not further define what it meant by the phrase "independent evidence that corroborates the victim's allegation," nor did it state whether evidence of uncharged sexual misconduct would suffice. Id. We therefore must look for guidance to the "purpose and legislative history of the statute." See Commonwealth v. Ray, 435 Mass. 249, 252 (2001), quoting Massachusetts Hosp. Ass'n v. Department of Med. Sec., 412 Mass. 340, 346 (1992).

The provision at issue here was added by St. 2006, c. 303, "An Act increasing the statute of limitations for sexual crimes against children" (act). By lengthening the limitations period, which previously had been fifteen years, see G. L. c. 277, § 63, as amended by St. 1996, c. 26, the Legislature sought "to give child victims of sexual abuse the time they need to heal, come

forward and still have their day in court."  See Executive Department Press Release, [Lieutenant Governor] Healey Signs Tougher Penalties for Sex Offenders into Law (September 21, 2006).

The text of the statute suggests that there also was concern that memories of childhood abuse, when recalled decades later, may not be sufficiently precise to serve as the sole basis for a criminal conviction.[22]  See G. L. c. 277, § 63 (victim's childhood memories alone insufficient for conviction, even if bolstered by "opinions of mental health professionals"); Commonwealth v. Hatch, 438 Mass. 618, 622 (2003) ("primary source of insight into the intent of the Legislature is the language of the statute" [citation omitted]).  This is consistent with the act's sparse legislative history, which reflects the views of some members of the Legislature that extending the statute of limitations would impinge the defendant's right to a fair trial.  See State House News Service (July 26, 2006) (statement of Rep. Fagan expressing concern that extending or lifting statute of limitations might impinge right

---

[22] See Stogner v. California, 539 U.S. 607, 631 (2003), citing Holdsworth, Is It Repressed Memory with Delayed Recall or Is It False Memory Syndrome?  The Controversy and Its Potential Legal Implications, 22 Law & Psychol. Rev. 103, 103-104 (1998) ("Memories fade, and witnesses can die or disappear. . . .  Such problems can plague child abuse cases, where recollection after so many years may be uncertain, and 'recovered' memories faulty").

to "a fair trial" and would not "protect the innocent" defendant); id. (statement of Rep. Loscocco that "I don't know if I could remember where I [even] was" twenty-seven years ago). Thus, the act's provisions apparently were intended not only to protect the interests of victims, but to safeguard "the principles of a fair trial." See id. (statement of Rep. Fagan). See also id. (statement of Rep. Grant that bill is "a compromise that recognizes both sides of this" issue).

Based on the above, it is evident that the act was intended to balance the aforementioned concerns by allowing prosecutions for such offenses to proceed at any time, while specifying that indictments returned more than twenty-seven years after the fact must be supported by "independent evidence that corroborates the victim's allegation," St. 2006, c. 303, § 9, such that a conviction cannot be based solely on the victim's recollections of abuse decades earlier. In addition, the corroborative evidence "shall not consist exclusively of the opinions of mental health professionals," id., indicating that this evidence must do more than bolster a victim's credibility -- it must be a separate source of proof tending, in some way, to show the defendant's guilt. See Healey Signs Tougher Penalties for Sex Offenders into Law, supra ("a new provision extends the statute of limitations 'to life' if independent admissible evidence, such as [deoxyribonucleic acid (DNA)] samples, is available to

corroborate a victim's allegation" [emphasis supplied]).[23]  In sum, it appears that the act advances its aim of protecting "the principles of a fair trial," see State House News Service, supra (statement of Rep. Fagan), by requiring that a defendant not be convicted unless there is at least some evidence of guilt in addition to the victim's potentially imprecise memories.

While the Legislature did not define specifically what form this additional evidence must take, the act was formulated against the backdrop of other corroboration requirements elsewhere in our statutory and common law.  See Commonwealth v. Clark, 446 Mass. 620, 625 (2006) (courts "look to preexisting common law as an aid to the construction of undefined terms in a statute"); Commonwealth v. McLeod, 437 Mass. 286, 290 (2002) ("Where the language of a statute is inconclusive, courts must look to . . . analogous statutory material, and relevant case law").

A common thread running through our cases involving other corroboration requirements is that such evidence must relate to the specific criminal act at issue.  See, e.g., Commonwealth v. Noble, 417 Mass. 341, 345 (1994) (if "[prior inconsistent grand jury testimony] is the only source of support for the central

---

[23] A bill introduced the previous year similarly would have allowed an indictment to "be found and filed at any time" "if a [deoxyribonucleic acid] sample . . . of the perpetrator is collected and stored."  See 2005 House Doc. No. 650.

allegations of the charge," [citation omitted], there must be evidence corroborating those central allegations; grand jury testimony that defendant joint venturer knew about murder and intended to participate was corroborated by evidence of defendant's interactions with shooter at time of murder); Commonwealth v. Costello, 411 Mass. 371, 375 (1991) ("alleged victim's testimony . . . does corroborate many elements of the defendant's [confession to rape of a child], [but it] does not corroborate any element of the crime except for the age of the alleged victim" and was therefore insufficient); Commonwealth v. Silva, 401 Mass. 318, 324-325 & n.7 (1987) (in perjury case, testimony that defendant lied must be "corroborat[ed by] evidence [that] 'tend[s] to establish the defendant's guilt'" and that is "inconsistent with the innocence of the defendant" [citation omitted]; testimony that defendant falsely denied making certain statements was corroborated by evidence that person who heard statements only could have obtained information in them from defendant); Commonwealth v. Forde, 392 Mass. 453, 458 (1984) (there must "be some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary"; corroboration provided by victim's dead body); Commonwealth v. DeBrosky, 363 Mass. 718, 728-730 (1973) (construing G. L. c. 244, § 20I, court stated that there must be some "corroborating evidence" "in

support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant"; corroboration provided by two witnesses who saw person at scene of crime fitting defendant's description).

We find particularly helpful the analysis in one such case, Commonwealth v. Helfant, 398 Mass. 214, 215 (1986), in which, as here, the defendant was charged with a sexual crime ("drugging for unlawful sexual intercourse").  There, we stated that the Commonwealth was required by statute to prove the crime with evidence "corroborat[ing the victim's testimony] in a material particular."  Id. at 219 n.3, citing G. L. c. 272, § 11. Surveying our cases dealing with comparable corroboration requirements, we concluded that corroborating evidence must relate to the specific criminal act at issue, and, in particular, that it must consist of "some specific testimonial fact, which, in the context of the case, is probative on an element of the crime."  Id. at 219 (corroboration provided by testimony that drug used to subdue victim detected shortly thereafter in her blood stream, and that needle marks were found on her arm).  In that case, the "evidence . . . corroborate[d] a material particular of the [victim's] testimony -- that the defendant administered a drug to her" -- as the "defendant could not be convicted on the drugging charge without proof of the injection."  Id. at 219, 220.  Indeed, we cited as corroboration

only facts related to the act with which the defendant was charged, id. at 218-220, despite substantial evidence of prior sexual misconduct.[24] Id. at 224-227.

The standard articulated in Commonwealth v. Helfant is especially appropriate for defining the corroboration requirement in the statute at issue here, for several reasons. It distills our construction of comparable corroboration requirements, derives from the interpretation of a statute relating to sexual crimes, and furthers the statutory aim of ensuring that the occurrence of the criminal act alleged by a victim is proven, at least in part, by some source other than the victim's testimony. Here, because the brother's testimony presented evidence only of uncharged misconduct, and did not provide "some specific testimonial fact," id. at 129, related to the particular incidents of rape described in the "victim's

---

[24] Our decision in Commonwealth v. King, 387 Mass. 464, 470 (1982) (uncharged sexual misconduct admissible to corroborate victim's testimony because such evidence "prove[s] an inclination to commit the [acts] charged"), is not to the contrary. There, we held that the Commonwealth was permitted to present evidence of uncharged sexual misconduct; we did not say that such evidence would suffice where corroboration is required. Id. But see People v. Yovanov, 69 Cal. App. 4th 392, 404 (1999) (under similarly-worded statute mandating corroboration, "uncharged sexual misconduct . . . can be used to corroborate a victim's allegation of sexual abuse"). The California court's reasoning was based on legislative history suggesting that "evidence of any prior sexual offenses is [a] particularly probative" form of evidence. Id. We are unaware of any comparable legislative history concerning G. L. c. 277, § 63.

allegation," the Commonwealth's proof fell short.  See G. L. c. 277, § 63.

We recognize that, so construed, G. L. c. 277, § 63, sets a high bar for prosecuting sexual offenses against children that are alleged to have occurred many years before.  Nonetheless, our own cases suggest that this bar is not insuperable.[25]  Cf. Commonwealth v. Feijoo, 419 Mass. 486, 496 (1995) (defendant recorded sexual acts with minors and preserved recordings); Commonwealth v. Abrahams, 85 Mass. App. Ct. 150, 151 (2014) (defendant charged with rape of child left DNA evidence); Commonwealth v. Villalta-Duarte, 55 Mass. App. Ct. 821, 822, 823 (2002) (confession to rape of child corroborated by testimony that, around time of rape, victim "developed a 'serious' diaper rash in her vaginal area" and "small scratches on her face").

Accordingly, because the Commonwealth's corroboration of the pre-October 3, 1981, incidents fell short, and because the jury returned a general verdict that could have been based solely on those incidents, the defendant's conviction must be vacated.  At any new trial, the Commonwealth will be limited to proceeding on the basis of incidents for which sufficient evidence was introduced, i.e., incidents after October 3, 1981. Because the evidence was insufficient with respect to the

---

[25] See Commonwealth v. Rodriguez, 76 Mass. App. Ct. 59, 64-65 (2009) (defendant's confession to rape of child corroborated by testimony of percipient witness).

incidents on or before October 3,1981, the defendant may not be retried for those incidents.[26]

ii. Lack of instruction on corroborating evidence. The defendant maintains that, because independent corroboration was required for the incidents that occurred prior to October 3, 1981, the jury should have been instructed regarding the Commonwealth's obligation to provide corroborating evidence. We agree.[27]

"When a party makes a request legally correct and pertinent to the issues presented by the case, it is incumbent on the judge to instruct the jury in a manner which substantially covers the particular point in question." Commonwealth v. Dane Entertainment Servs., Inc., 19 Mass. App. Ct. 573, 578 (1985), S.C., 397 Mass. 197 (1986). In other contexts where corroborating evidence is required, we have said that it is appropriate for a trial judge to instruct the jury

---

[26] Accordingly, we need not address the defendant's argument that there was insufficient evidence that the incidents in West Wareham took place via "mouth on vagina," as alleged in the indictment, since those incidents took place before October 3, 1981.

[27] Because the corroborative evidence offered by the Commonwealth was, as explained, insufficient as a matter of law, there will be no need for an instruction on this issue at any new trial, as the defendant may not be retried for acts for which corroboration was necessary, i.e., those on or before October 3, 1981. We nevertheless choose to address the issue "in order to provide guidance" to judges and parties in future cases. See Commonwealth v. Agosto, 428 Mass. 31, 35 n.6 (1998).

about the Commonwealth's obligation to provide such evidence. See, e.g., Commonwealth v. Dyous, 436 Mass. 719, 727 n.11 (2002) (approving judge's instruction on credibility of immunized witness, which included statement that "defendant cannot be convicted solely on the testimony of a person granted immunity" and that there must be "some corroboration" "on at least one element of proof essential to convict the defendant"). Cf. K.M. Tuttman, Massachusetts Superior Court Criminal Practice Jury Instructions § 4.18 (Mass. Cont. Legal Educ. 2d ed. 2013) ("You may convict a person of perjury based on the testimony of a single witness only if there is also evidence of a direct or clear and compelling character that will support no explanation that is consistent with the innocence of the defendant"). This is so because, while it is the judge's role to determine whether sufficient corroborative evidence has been presented, the jury must decide whether to credit that evidence.[28]

---

[28] See Weiler v. United States, 323 U.S. 606, 610 (1945) (in perjury case, "[t]wo elements must enter into a determination that corroborative evidence is sufficient:  (1) that the evidence, if true, substantiates the testimony . . . ; (2) that the corroborative evidence is trustworthy.  To resolve this latter question is to determine the credibility of the corroborative testimony, a function which belongs exclusively to the jury"); United States v. Bryant, 420 F.2d 1327, 1331 (D.C. Cir. 1969) ("The corroboration doctrines in this jurisdiction require not only the existence of evidence sufficient to avoid a directed verdict, but also that the case be sent to the jury with instructions . . . that it is their responsibility as jurors to determine whether evidence which they credit establishes such corroboration").

Here, the defendant's proposed instruction was, in essence, "legally correct."[29]  See Commonwealth v. Dane Entertainment Servs., Inc., supra.  It was also "pertinent to the issues presented by the case," id., as the credibility of the corroborating evidence (i.e., the brother's testimony) was contested at trial.  This being so, the jury should have been instructed regarding the Commonwealth's obligation to provide independent evidence that related to the specific criminal acts at issue and that is probative on an element of the crime.[30]  See Commonwealth v. Helfant, 398 Mass. at 220.

d.  Evidentiary issues.  We address briefly certain evidentiary issues raised by the defendant that may arise at any new trial.

i.  New Hampshire driver's record.  The defendant's New Hampshire driver's record was admitted in evidence without having been disclosed during pretrial discovery, see Mass. R.

---

[29] The defendant requested an instruction that "you must determine whether the indictments, if brought [more than twenty-seven] years [after] the alleged conduct, are supported by independent corroborating evidence."  While the judge was not obligated to give the instruction in exactly this form, see Commonwealth v. Johnston, 467 Mass. 674, 702 (2014), the defendant's request accurately reflected the law as stated in G. L. c. 277, § 63, and required that some instruction on the issue be given.

[30] Where appropriate, the jury should be instructed that this corroboration may not consist solely of the opinions of mental health professionals.  See G. L. c. 277, § 63.  The Commonwealth did not offer such evidence in this case.

Crim. P. 14 (a) (1) (A) (vii), as amended, 444 Mass. 1501 (2005), and without the "double certification" required by Mass. R. Crim. P. 40 (a) (1), 378 Mass. 917 (1979). See Reporters' Notes to Rule 40, Mass. Ann. Laws, Rules of Criminal Procedure, at 1739 (LexisNexis 2015). This was error.[31]

The defendant contends also that introduction of this record violated his confrontation rights, a claim that depends on whether the document was produced "under circumstances which would lead an objective witness reasonably to believe that the [document] would be available for use at a later trial[.]" Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009), quoting Crawford v. Washington, 541 U.S. 36, 52 (2004). We cannot determine from this record the circumstances under which the document was created. Compare Commonwealth v. Parenteau, 460 Mass. 1, 8, 9 (2011) ("registry [of motor vehicles] certificate was dated . . . nearly two months after the criminal complaint . . . had issued against the defendant. As such, it plainly was made for use at the defendant's trial"; "business records are not admissible at trial 'if the regularly conducted business activity is the production of evidence for use at

---

[31] Nevertheless, because there is a "reasonable prospect" that these deficiencies may be cured on retrial, we are not precluded from considering the driver's record in assessing whether the evidence of tolling was sufficient. Commonwealth v. DiBenedetto, 414 Mass. 37, 46 n.14 (1992), S.C., 427 Mass. 414 (1998).

trial'" [citation omitted]).  More information about the document's provenance must be elicited if it is to be admitted on retrial without accompanying testimony.

ii.  Evidence from DSS investigation.  The defendant argues that his right to present a defense was impaired by the judge's ruling that he could not introduce evidence from a 2004 DSS investigation involving S.F.'s daughter.  Documentation from that investigation showed that J.G.C. urged S.F. to file an ultimately unsubstantiated report of abuse on behalf of her child.  The defendant argued in his motion to introduce portions of this report that it showed J.G.C.'s "bias in perceiving certain conduct as evidence of sexual abuse," and therefore supported the defendant's claim that J.G.C. implanted false memories in S.F. through suggestive questioning.  The judge ordered this evidence excluded as not "relevant."

A "defendant is not necessarily deprived of the right to present his theory of defense simply because the judge excludes a piece of evidence supporting such theory."  Commonwealth v. Jones, 464 Mass. 16, 19 n.5 (2012).  "Here, exclusion of the proffered testimony did not prevent the defendant from presenting his theory" that J.G.C. engaged in suggestive questioning.  Id.  The defendant pursued this theory in his cross-examination of all three of the Commonwealth's witnesses -- S.F., her brother, and J.G.C. -- and in his closing argument.

Indeed, J.G.C. herself agreed during questioning by defense counsel that, after discovering S.F. alone with the defendant in the victim's bedroom in Onset, she "badgered" S.F. about whether she had been abused.

Given that the defendant was permitted to present his theory of defense, the question remains whether it was an abuse of discretion to exclude the proffered evidence on the ground that it was not relevant to that defense. Commonwealth v. Dunn, 407 Mass. 798, 807 (1990) ("Whether evidence is relevant in any particular instance" is a "question[] within the sound discretion of the [trial] judge"). It was not unreasonable for the judge to conclude that evidence of J.G.C.'s behavior in an unrelated 2004 DSS investigation was not relevant to whether she engaged in suggestive questioning twenty-five years earlier. We discern no abuse of discretion.

e. Evidence of prior bad acts. The defendant argues that the Commonwealth's evidence on the acts charged in the indictment was "overwhelmed" by evidence of prior bad acts, i.e., acts against S.F. prior to September 29, 1979, the date of the first act listed in the indictment. He notes, in particular, that his family moved to Wareham in late 1978 or early 1979, and that the incidents alleged to have taken place

in Wareham might, therefore, have occurred before September 29, 1979.[32]

The general rule in "sexual assault cases[ is that] some evidence of uncharged conduct may be admissible," but that a "judge should . . . intervene[] to prevent the 'danger of overwhelming a case with such bad act evidence.'" Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006), quoting Commonwealth v. Roche, 44 Mass. App. Ct. 372, 380 (1998).  Here, however, the judge had no reason to intervene at the time the evidence was presented, because the date at issue -- September 29, 1979 -- was inserted into the indictment only after the close of all the evidence, in response to the defendant's argument that incidents before that date were time barred.[33]  After the date was inserted, the judge properly provided a forceful curative instruction that the jury was to disregard entirely evidence of acts from before September 29, 1979.[34]  "Jurors are presumed to follow such instructions." Commonwealth v. Gonzalez, 473 Mass.

---

[32] The defendant notes also that the incident in the bathroom of the grandparents' house in Wareham took place when S.F. was "about four."  Given that S.F. turned four on August 19, 1979, approximately one month before the period covered by the indictment, it is not clear whether this incident took place during the period covered by the indictment.  See note 2, supra.

[33] Previously, the indictment had alleged that the incidents of rape took place "on diverse dates between 1979 and 1981."

[34] The judge instructed that "you are only to consider conduct within th[e] periods [in the indictment].  You are not to consider any incident outside of that time period."

415, 427 (2015) ("the judge instructed the jury that they were to disregard the references and not to take them into account in any way").

3. Conclusion. The judgment of conviction is vacated and set aside, and the case is remanded to the Superior Court for further proceedings, as required, consistent with this opinion. At any new trial, the defendant may be tried only for incidents alleged in the indictment which are alleged to have occurred after October 3, 1981.

So ordered.