NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-438

COMMONWEALTH

vs.

PAUL COLLINS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Over three years after he pleaded guilty to various sex offenses, the defendant filed a motion pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), seeking to withdraw his pleas on the ground that his plea counsel was ineffective.  On July 23, 2021, the same judge who presided over the defendant's change of plea hearing denied the motion after an evidentiary hearing.  We affirm.

Background.  1.  The defendant's pleas.  We summarize the facts found by the judge, supplemented with undisputed facts from the record.  See Commonwealth v. Dew, 492 Mass. 254, 255 n.2 (2023), quoting Commonwealth v. Smiley, 431 Mass. 477, 481 (2000) ("In examining the defendant's claim that his counsel was ineffective, we accept the motion judge's subsidiary findings of fact absent clear error").  The defendant was the aquatic

director and swim team coach at the Arlington Boys Club from September 1977 until July 1980, when he was asked to resign after allegations surfaced that he had sexually assaulted one of the boys on the swim team.  The defendant moved out of State shortly thereafter.

Police learned of the sexual assault allegations against the defendant in 2013, by which time "multiple people" had come forward.  The defendant was arrested at his home in New York and interviewed by Arlington police on May 17, 2013.  During the interview, the defendant denied the sexual abuse allegations, while also making statements acknowledging that it was possible sexual abuse had occurred of which he had no recollection.[1] Later in the interview, the defendant said "All right.  I might have been over friendly with the two kid --, a couple of kids, but I did not rape anybody.  . . .  I did not force myself on anybody.  "  When asked to describe what he meant by "over friendly," the defendant stammered, "I, I . . . I, ah, yeah, I know.  I know."  He then asked the officers to "just give [him] a second," at which point the interview appears to have ended. The following month, a grand jury returned an indictment

--------

[1] For example, when police asked the defendant if it was "possible that something . . . could have happened with one of the kids" while the defendant was under the influence of prescription opioid medication, the defendant responded, "I suppose everything is -- yes.  I guess this would be possible, but I don't remember anything like that happening."

charging the defendant with one count of rape of a child with force, three counts of indecent assault and battery on a child under the age of fourteen, and one count of open and gross lewdness.

Counsel for the defendant was appointed and met with him at least ten times between May 24, 2013, and his change of plea hearing on February 6, 2015. Due to the age of the victims' allegations, trial counsel researched the applicable statute of limitations, which is set forth in G. L. c. 277, § 63 (§ 63). Section 63 states, in relevant part, that where a complaint or indictment for rape or sexual assault of a child is filed more than twenty-seven years after the commission of the alleged crime, "such offense shall be supported by independent evidence that corroborates the victim's allegation." Trial counsel "did no significant research into the meaning" of "corroborates" within the context of § 63 but believed that the multiple victims' accusations corroborated one another and were further corroborated by evidence the defendant worked at the Boys Club and had left the Commonwealth in 1980 after he was informed of the allegations.

Trial counsel advised the defendant that he had little chance of prevailing at trial because the victims had no motive to lie, and warned him that because there were multiple victims, he could face consecutive sentences if convicted. After

entering his guilty pleas in February 2015, the defendant was sentenced to concurrent sentences of eight to ten years in State prison followed by ten years of probation.

2. Subsequent developments.  Over one year after the defendant entered his guilty pleas, in Commonwealth v. White, 475 Mass. 724, 725 (2016), the Supreme Judicial Court (SJC) considered, for the first time, the meaning of § 63's corroboration requirement.  Applying the standard articulated in Commonwealth v. Helfant, 398 Mass. 214, 219 (1986), the SJC held that § 63 requires corroborating evidence that relates "to the specific criminal act at issue and, in particular, . . . consist[s] of 'some specific testimonial fact, which, in the context of the case, is probative on an element of the crime.'" White, supra at 739, quoting Helfant, supra at 219.  The SJC opined that, although the Helfant standard had originated from the interpretation of a different statute's corroboration requirement, G. L. c. 272, § 11, the standard was "especially appropriate for defining the corroboration requirement" of § 63 because "[i]t distills our construction of comparable corroboration requirements, derives from the interpretation of a statute relating to sexual crimes, and furthers the statutory aim of ensuring that the occurrence of the criminal act alleged by a victim is proved, at least in part, by some source other than the victim's testimony."  White, supra at 739-740.

4

After reading White and Helfant, trial counsel concluded that she had "made a mistake" in advising the defendant, as there had not been any corroborating evidence in his case within the meaning of § 63.  She testified at the evidentiary hearing on the motion for new trial that if she had been aware of Helfant and been able to predict the SJC's future ruling in White before the defendant entered his pleas, she would have filed a motion to dismiss and advised him he had a good chance of prevailing at trial.  Counsel sought to rectify "[her] mistake" by notifying the defendant and requesting the appointment of postconviction counsel.

On April 26, 2018, the defendant filed a motion seeking to withdraw his guilty pleas, arguing that his decision to accept the plea agreement was not made knowingly, voluntarily, or intelligently because his plea counsel failed to adequately research and inform him of the corroboration requirement of § 63.  The defendant's motion was denied after an evidentiary hearing, and this appeal followed.

Discussion.  1. Standard of review.  "A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001)." Commonwealth v. Jean-Louis, 102 Mass. App. Ct. 348, 351 (2023). "A judge may grant the defendant's motion only if it appears that justice may not have been done" (quotations and citations

5

omitted).  Commonwealth v. Furr, 454 Mass. 101, 106 (2009).

"Where an evidentiary hearing is conducted on a motion for a new

trial, we 'accept the [judge's] findings where they are

supported by substantial evidence in the record,' and we 'defer

to the judge's assessment of the credibility of witnesses.'"

Dew, 492 Mass. at 260-261, quoting Commonwealth v. Tate, 490

Mass. 501, 505 (2022).  "[W]e review the judge's decision for

abuse of discretion or clear error of law, and we reverse only

if it appears 'manifestly unjust, or . . . the [proceeding] was

infected with prejudicial constitutional error.'"  Commonwealth

v. Loring, 463 Mass. 1012, 1013 (2012), quoting Commonwealth v.

Russin, 420 Mass. 309, 318 (1995).

2.  Effective assistance of counsel.  "Before deciding

whether to plead guilty, a defendant is entitled to 'the

effective assistance of competent counsel.'"  Commonwealth v.

Minon, 102 Mass. App. Ct. 244, 247 (2023), quoting Padilla v.

Kentucky, 559 U.S. 356, 364 (2010).  In order to make out a

claim that plea counsel was ineffective, "a defendant must . . .

show serious incompetency of counsel (behavior falling

measurably below that which might be expected from an ordinarily

fallible lawyer) and prejudice."  Commonwealth v. Mahar, 442

Mass. 11, 15 (2004).  See Commonwealth v. Saferian, 366 Mass.

89, 96 (1974).

6

a.  Competency of counsel.  Here, the defendant contends his plea counsel was incompetent because she failed to properly research the corroboration requirement of § 63.  In analyzing this claim, we consider whether defense counsel acted "within the range of competence demanded of attorneys in criminal cases" at the time of the defendant's February 2015 change of plea hearing, and do not view her conduct "retrospectively through the lens of subsequent events" (citation omitted).  Mahar, 442 Mass. at 17.

Although Helfant was issued approximately thirty years before the defendant's change of plea hearing, the SJC in Helfant did not interpret "corroboration" within the context of § 63, but rather in the context of G. L. c. 272, § 11, which appears in a different chapter of the General Laws and contains language -- absent from § 63 -- that requires allegations of certain crimes against the public be corroborated "in a material particular."  Here, the defendant was charged with crimes against the person.  Before White, it would have been reasonable to conclude that the absence from § 63 of language requiring corroboration "in a material particular" meant that § 63's corroboration requirement could be satisfied by a broader range of evidence than that required by G. L. c. 272, § 11. Therefore, counsel acted within the range of competence demanded of criminal attorneys when she did not assume, at the time of

7

the defendant's change of plea hearing, that <u>Helfant</u> controlled this case.

The defendant's suggestion that his counsel should have nevertheless anticipated that the SJC would eventually rely on <u>Helfant</u> to define the corroboration requirement of § 63 would have required a level of prescience that is not required by our case law. See <u>Mahar</u>, 442 Mass. at 19 (attorneys not required "to foretell the future"). Counsel's failure to predict, before <u>White</u> was decided, that the definition of "corroborate" used in <u>Helfant</u> was applicable to § 63, did not constitute ineffective assistance.[2] See <u>Mahar</u>, <u>supra</u> at 19 ("the attorney's advice was reasonable, and it did not become incompetent because a subsequent judicial opinion made clear an aspect of the offense that previously was less certain").

---

[2] In ordinary usage, the term "corroborate" means "[t]o strengthen or confirm; to make more certain." Black's Law Dictionary (11th ed. 2019). This definition of "corroborate," which appears to be the definition that trial counsel presumed was applicable to § 63 during the plea proceedings, is used throughout our criminal case law. See, e.g., <u>Commonwealth</u> v. <u>Ahart</u>, 464 Mass. 437, 440 (2013) (cell phone records "corroborated much of [witness's] testimony" concerning his whereabouts at time of crime); <u>Commonwealth</u> v. <u>DiGiambattista</u>, 442 Mass. 423, 431 (2004) (defendant's guilt "corroborated" by his anger toward victim and evidence he was one of only three people with keys to door used by perpetrator); <u>Commonwealth</u> v. <u>Santiago</u>, 54 Mass. App. Ct. 656, 660 n.7 (2002) ("'corroborate' means to confirm or support the credibility of the victim's testimony").

b.  _Prejudice_.  Even assuming arguendo that trial counsel's failure to anticipate the holding in _White_ was behavior falling measurably below that expected from an ordinary fallible lawyer (a conclusion we do not reach here), the defendant cannot show that he was prejudiced.  "In the context of a guilty plea, in order to satisfy the prejudice requirement, the defendant has the burden of establishing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (quotations and citation omitted).  _Commonwealth_ v. _Lastowski_, 478 Mass. 572, 577 (2018).  "Additionally, the defendant must 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"  _Id_., quoting _Commonwealth_ v. _Clarke_, 460 Mass. 30, 47 (2011).  This requires a showing that the defendant had an available, substantial ground of defense that he would have pursued but for counsel's alleged error, or that there is a reasonable probability that a different plea bargain could have been negotiated.  See _Clarke_, _supra_.

Here, even if counsel had anticipated that § 63's corroboration requirement would be interpreted by analogy to _Helfant_, the defendant's ability to defend the charges would have remained the same, because the corroboration requirement was satisfied by his statements to police.  In particular, the

judge could have reasonably inferred that, viewed collectively and in context, the defendant tacitly admitted to committing the alleged rape and sexual assaults when he conceded that it was "possible" the sexual assaults had occurred, and later, that he "might have been overly friendly with . . . a couple of kids." See Commonwealth v. Buono, 484 Mass. 351, 364 (2020) (viewed within context of victim's allegations, grand jury could have reasonably inferred word "it" in defendant's statement, "it wasn't gonna happen again," was reference to "the alleged oral rapes for which the defendant was charged, therefore providing the . . . corroborating evidence" required by § 63). Contrast White, 475 Mass. at 735, 740 (testimony that witness saw sexual abuse on later date and in different location than charged offenses did not satisfy § 63 corroboration requirement). Cf. Commonwealth v. Grenier, 415 Mass. 680, 689 (1993) ("the defendant's response, dropping his head, saying no, pausing, and then denying involvement, . . . could be seen collectively as an admission by word and deed"); Commonwealth v. MacKenzie, 413 Mass. 498, 506 (1992) (equivocal response to accusatory statement "which, under the circumstances, a reasonable person would challenge," admissible to support theory that "the party's response amounts to an admission of the truth of the accusation"); Commonwealth v. Cancel, 394 Mass. 567, 571 (1985), quoting Commonwealth v. Machado, 339 Mass. 713, 715-716 (1959)

10

(responses to incriminating accusations made in "an equivocal, evasive or irresponsive way inconsistent with . . . innocence" admissible as evidence of guilt). Rather than negate this inference, the defendant's assertion that he never "forced" himself on anyone could reasonably be construed as an effort to mitigate his culpability for the assaults by emphasizing the absence of physical coercion.

Because the defendant's statements to police provided sufficient corroboration of the victims' allegations within the meaning of § 63, the defendant was not deprived of an available, substantial ground of defense, nor did a reasonable probability exist that a different plea bargain could have been negotiated. Therefore, we discern no abuse of discretion in the judge's conclusion that the defendant did not establish that, but for his counsel's alleged incompetency, it would have been rational for the defendant to reject the plea agreement.

<u>Order denying motion to withdraw guilty pleas affirmed</u>.

By the Court (Blake, Walsh & Hershfang, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered: August 21, 2023.

---

[3] The panelists are listed in order of seniority.