JANICE ROBINSON vs. COMMONWEALTH.

Suffolk.  October 8, 1986. — January 26, 1987.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Psychotherapist. Evidence,* Privileged communication, Communication be-
tween patient and psychotherapist. *Privileged Communication. Statute,*
Construction. *Words,* "Patient," "Treatment," "Psychotherapist."

In proceedings against a defendant charged with manslaughter in connection
with the death of her infant son, the judge erred in denying the defendant's
motion to exclude as privileged under G. L. c. 233, § 20B, evidence
derived from a forty-five minute private conversation between the defend-
ant and a licensed physician who was, at the time of the consultation,
a fellow in child psychiatry in the hospital where the critically ill infant
was being treated. [133-136]


CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 17, 1986.

The proceeding, seeking interlocutory relief in a matter pend-
ing in the Superior Court Department, was transferred to the
full court by *Liacos, J.*

*Lisa deSousa (Constance M. Sweeney & Daniel J. O'Con-
nell, III,* with her) for Janice Robinson.

*Robert N. Tochka,* Assistant District Attorney, for the Com-
monwealth.

LIACOS, J. On May 23, 1984, a Suffolk County grand jury
indicted Janice Robinson (hereinafter the defendant) for man-
slaughter in connection with the death of her eleven month old
son. The defendant moved in May, 1985, to exclude the pre-
sentation of psychiatric evidence, specifically, "any evidence
derived directly or indirectly from a psychiatric consultation
between Children's Hospital staff, Dr. [Barbara] Burr and the
defendant occurring on March 4, 1984." According to the
defendant, she had consulted with Dr. Burr, a staff psychiatrist[1]

---

[1] Dr. Burr testified that she is a licensed physician, board certified in
pediatrics. She was a fellow in child pyschiatry at Children's Hospital at
the time of her consultation with the defendant.

at Children's Hospital in Boston, "to assist her in dealing with the emotional problems as a result of her child's illness." A psychiatric report on that consultation was placed in the infant's medical file and was provided to the district attorney's office without the defendant's authorization.

The defendant has maintained that disclosure of the report, or any information derived from the consultation, would violate her rights under G. L. c. 233, § 20B (1984 ed.), which creates a privilege as to certain communications between a patient and a psychotherapist. Following an evidentiary hearing on January 16, 1986, the motion judge entered an order on April 14, 1986, denying the defendant's motion. We reverse.

Pursuant to G. L. c. 211, § 3 (1984 ed.), the defendant filed an application with this court seeking leave to appeal from the denial of her motion to exclude. A single justice of this court granted the application, and the case was transferred to the full court on April 30, 1986.[2]

The facts are as follows. The defendant's eleven month old son, admitted to Children's Hospital for "failure to thrive," was transferred to the medical intensive care unit when he became acutely ill with sodium chloride intoxication. The director of the hospital's emergency psychiatric services, a staff psychiatrist, asked Dr. Burr to speak with the defendant "because of the emergency nature of the situation." Dr. Burr testified that she spoke to the defendant "because it was perceived that this mother was in the midst of a crisis situation and it was the wish of the staff to see if there was anything further the hospital could offer by way of help or assistance to her."

At the outset of her meeting with the defendant, Dr. Burr introduced herself as a psychiatrist. Dr. Burr testified as fol-

---

[2] The application presented to the single justice also sought an interlocutory appeal pursuant to G. L. c. 278, § 28E (1984 ed.), and Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979), as to the denial of a motion to suppress other evidence. The single justice allowed both aspects of the application. Subsequently, the matters were bifurcated for purposes of hearing by the full bench. The interlocutory appeal on the motion to suppress other evidence is also before the court.

lows: "I told [the defendant] that I understood that her baby was in critical condition; that I realized that that was probably very difficult for her; and I would be interested to [*sic*] hearing anything she had to tell me about her feelings about the situation; and whether there was something we could do to be helpful." Alone in a family room in the intensive care unit, they talked for approximately forty-five minutes. Dr. Burr obtained a brief history from the defendant; evaluated her "mental status"; and formed a clinical impression. She noted that the defendant's "affect" was somewhat inconsistent with her son's life-threatening situation. The history and assessment was reported on a three-page consultation request/report form, together with a "plan" for continued psychiatric and social services.

The judge entered an order denying the defendant's motion to exclude presentation of psychiatric evidence, based on the following findings and conclusions. "The Court finds that the defendant was not a 'patient' as defined by General Laws, Chapter 233, Section 20 B in that the consultation was not during the course of diagnosis or treatment. There was no diagnosis or treatment. Assuming arguendo, [the defendant] was a patient, it is problematical whether Dr. Burr would qualify under definition of 'psychotherapist' under General Laws, Chapter 233, Section 20B. Any 'communications' between Dr. Burr and [the defendant] were not relative to diagnosis or treatment."

A judge's findings of fact must stand unless they are clearly erroneous. *Commonwealth* v. *Accaputo,* 380 Mass. 435, 448 n.18 (1980). *Commonwealth* v. *Moynihan,* 376 Mass. 468, 473 (1978). The ultimate legal conclusions to be drawn from the subsidiary findings of fact, however, are matters for review by this court. *Commonwealth* v. *Hosey,* 368 Mass. 571, 574-575 n.1 (1975). In this case, both the ultimate findings and the conclusions of the judge were clearly wrong.

General Laws c. 233, § 20B, grants to a "patient" the privilege of refusing to disclose, and of preventing a witness from disclosing, "any communication," wherever made, between that patient and a "psychotherapist" relative to the diag-

nosis or treatment of the patient's mental or emotional condition. "Patient" is defined as "a person who, during the course of diagnosis or treatment, communicates with a psychotherapist." G. L. c. 233, § 20B.[3] Thus, a proper ruling as to whether the defendant was a "patient" of Dr. Burr at the time of her consultation with the doctor turns, in part, on whether she communicated during the course of diagnosis *or* treatment. We need consider only the latter of these terms.

Neither the terms of G. L. c. 233, § 20B, nor cases interpreting that statute define "treatment." We have stated, however, that words or phrases in a statute are to be given their ordinary meaning and are to be construed according to their natural import and approved usage. *Burke* v. *Chief of Police of Newton,* 374 Mass. 450, 452 (1978). We need not define precisely what "treatment" means for purposes of G. L. c. 233, § 20B, to conclude, as we do, that the term must encompass the situation presented by this case.

At the request of a senior psychiatrist, Dr. Burr, a psychiatric fellow, initiated a conversation with a mother in the intensive care unit where her critically ill infant was being treated. Dr. Burr introduced herself as a psychiatrist, asked if there was anything the staff could do to be helpful, and said that she "would be interested to [*sic*] hearing anything she had to tell [her] about her feelings about the situation." The nineteen year old single mother talked with the doctor for forty-five minutes. Based on this private conversation, the physician wrote a three-page "consultation request/report" which included a plan for follow-up care. To hold that this communication was not privileged would be clearly in contravention of the legislative policy of confidentiality expressed by the Legislature in the enactment of G. L. c. 233, § 20B. "We are not free to water down the legislative policy embodied in the statute by loose construction or by giving our approval to informal procedures different from those prescribed." *Usen* v. *Usen,* 359 Mass.

---

[3] We note that the word "patient" is defined in Webster's New International Dictionary 1792 (2d ed. 1959) as "[a] sick person, now commonly, one under treatment or care, as by a physician or surgeon . . . ."

453, 457 (1971). See *Alberts* v. *Devine*, 395 Mass. 59, 67 (1985) (public policy favors a patient's right to confidentiality). It would tell parents of critically ill children that they cannot trust that their conversations with hospital psychiatrists under these circumstances would remain confidential, even in the context of a children's hospital which must, of necessity, try to help parents as it treats their children.[4]

The Commonwealth argues that the defendant can assert no privilege regarding her communication with Dr. Burr because no "confidential relationship" had been established between them. To support that proposition, the Commonwealth notes that the conversation was initiated by Dr. Burr, not by the defendant, and that the defendant repeated to others the comments she had made to Dr. Burr. Neither consideration defeats the defendant's privilege. The fact that the defendant did not initiate the communication is immaterial. Where the statute specifically provides that communications are privileged "regardless of the patient's awareness of such conversations," the question who initiated the conversation cannot determine whether it is privileged. That some of the information communicated to Dr. Burr was later repeated to others is also irrelevant. That a client tells a friend what he also tells his attorney in no way undermines the attorney-client privilege as to what was communicated to the attorney. That this was the patient's first, or last, conversation with the doctor similarly does not place it outside the privilege. We note that the attorney-client privilege, for example, may extend to preliminary communications looking toward representation, even if representation is never undertaken. *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979), citing 8 J. Wigmore, Evidence §§ 2292, 2304 (McNaughton rev. 1961).

---

[4] In *Usen* v. *Usen, supra* at 456, this court thought it "clear that the patient did not lose her privilege to prevent disclosure of a communication merely because it was made part of a hospital record."

In *Usen,* the court held that letters written by psychotherapists, relating to the diagnosis and treatment of a patient's mental and emotional condition, together with testimony disclosing conversations relating to the same, were inadmissible under G. L. c. 233, § 20B. *Id.* at 445-456.

Denying the defendant's motion, the trial judge also stated that "it is problematical whether Dr. Burr would qualify under definition of 'psychotherapist' " under G. L. c. 233, § 20B. We disagree. The statute defines "psychotherapist," in relevant part, as "a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry." Dr. Burr testified, and the Commonwealth does not dispute, that she is a licensed physician, board certified in pediatrics, and was employed as a fellow in child psychiatry at Children's Hospital from 1983 until 1985. Cf. *Commonwealth* v. *Mandeville,* 386 Mass. 393, 408-409 (1982) (unlicensed staff psychologist not a "psychotherapist" within G. L. c. 233, § 20B). At the time of her conversation with the defendant, Dr. Burr had been assigned exclusively to the psychiatric service department for approximately eight months. Her only duties and responsibilities were in the hospital's psychiatric department. She thus clearly comes within the statutory definition of "psychotherapist."

The judge's order denying the defendant's motion to exclude the presentation of psychiatric evidence is vacated. An order allowing the motion is to be entered in the Superior Court.

*So ordered.*