NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12312


COMMONWEALTH  vs.  JONATHAN PICKERING.



Essex.     December 5, 2017. - May 22, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker,
JJ.


Practice, Criminal, Probation, Revocation of probation.
    Evidence, Communication between patient and
    psychotherapist, Privileged communication.
    Psychotherapist.  Privileged Communication.




Indictments found and returned in the Superior Court
Department on June 4, 2014.

A proceeding for revocation of probation was heard by
Timothy Q. Feeley, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Emily A. Cardy, Committee for Public Counsel Services, for
the defendant.
Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.


LOWY, J.  While serving a probationary term in connection

with two convictions of open and gross lewdness, the defendant

endeavored to meet a person whom he believed was a thirteen year old boy so that he could perform sexual acts on him. Following a probation violation hearing, a judge in the Superior Court concluded that the defendant had violated his probation by committing child enticement in violation of G. L. c. 265, § 26C. The defendant appealed, claiming that the exclusion of certain testimony violated his constitutional right to present a defense, and we granted his application for direct appellate review. Specifically, he argues that the judge's sua sponte ruling to exclude the admission of certain evidence as violative of the psychotherapist-patient privilege, G. L. c. 233, § 20B, deprived him of his constitutional right to present a defense. Without deciding whether the psychotherapist-patient privilege applies to group therapy, we agree that the judge's evidentiary ruling that the psychotherapist-patient privilege applied here was erroneous because there was no evidence that the privilege would have been applicable in these circumstances. However, the defendant was not precluded from presenting the evidence at issue in this appeal, and he presented other evidence of arguably more weight on the same issue. Moreover, the excluded evidence was of minimal probative value, and the Commonwealth presented overwhelming evidence that the defendant violated his probation. Accordingly, we conclude that the defendant's constitutional right to present a defense was not violated and

exclusion of certain statements did not create a substantial risk of a miscarriage of justice.

Background.  We recite the facts as they were developed at the defendant's probation violation hearing.  In 2014, the defendant pleaded guilty to two counts of open and gross lewdness in violation of G. L. c. 272, § 16, and received a suspended term of incarceration and a five-year term of probation.  The defendant's probation included special conditions that prohibited him from having unsupervised contact with children under age sixteen, and required him to undergo sex offender treatment.  To fulfil this requirement, the defendant attended weekly group therapy sessions for sex offenders.  These sessions were facilitated by a therapy "group leader," who supervised a group of approximately eight sex offenders, some of whom had been convicted of sexually abusing children.[1]  In order to maintain a level of anonymity, the participants would only refer to each other by first name during the group therapy sessions.

Another participant in the defendant's sex offender therapy group, whom we shall call David Sawyer, attended the same group therapy sessions as the defendant for approximately six months.

---

[1] The record before the court is silent concerning the therapy group leader's qualifications or whether that person would have met the description of a psychotherapist under G. L. c. 233, § 20B.

Sawyer did not speak much during those sessions and described himself as a "listener," in contrast to the defendant, who spoke rather often. Although the two men attended the same group therapy sessions, they did not have a close relationship, and they never communicated or met outside those sessions. Indeed, Sawyer never used his last name in group therapy and never provided it to the other group members. However, there was evidence that the group therapy participants recorded their first and last names on a sign-in sheet when they attended the group therapy, for purposes of keeping attendance and reporting to the probation department.[2]

During the time that Sawyer and the defendant were attending the same group therapy sessions, Sawyer came across a personal advertisement that the defendant had posted on the Internet Web site Craigslist. The subject of the defendant's advertisement was, "Naked Driving and more - m4m." The advertisement included a message stating that the defendant was seeking to meet "young guys," under twenty-five years old, to engage in various sexual acts. The advertisement did not include the defendant's name, but Sawyer recognized the defendant from the photographs included in the advertisement, one of which depicted the defendant in the nude.

---

[2] It was unclear whether and to what extent the therapy group participants could see each other's full names on the sign-in sheet.

Sawyer testified that he was concerned that the defendant's advertisement indicated that the defendant was seeking to meet underage people in order to engage in sexual conduct. To determine whether Sawyer's concern was well founded, Sawyer responded by electronic mail (e-mail) message to the defendant's advertisement, claiming to be a thirteen year old boy who was interested in meeting the defendant.[3] The ensuing e-mail exchange involved the defendant sending multiple sexually explicit messages seeking to meet the boy and perform sexual acts on him. Moreover, on multiple occasions the defendant sought to confirm his understanding that the person he was communicating with was a thirteen year old boy. In one such e-mail message, the defendant requested a photograph of the boy so that he could verify that he was communicating with a thirteen year old boy and "[n]ot a cop or someone else." Sawyer responded by sending the defendant a photograph of a young boy that he found as a result of searching for "cute young boy" on the Internet. After receiving that photograph, the defendant made the additional request that the boy send a nude photograph of himself. Sawyer declined, stating, "Absolutely not. . . . For your own good." The defendant responded, stating his

---

[3] Although we describe the electronic mail exchange (e-mail) as the defendant communicating with a child for the sake of clarity, no children were involved in the correspondence.

approval, "Good answer. . . . I await your next contact. . . . You seem concerned about me . . . and you."

Throughout the course of this correspondence, Sawyer took precautions to conceal his identity and maintain the illusion that he was a thirteen year old boy. Sawyer did this by using a privacy setting on the Craigslist Web site. When this setting is applied, the recipient of an e-mail message can see only a generic alpha-numeric address and not the sender's personal e-mail address. Moreover, Sawyer steadfastly maintained that he was a thirteen year old boy throughout the exchange; the defendant never indicated that he was aware that he was communicating with anyone other than a thirteen year old boy.

Sawyer eventually sent the sexually explicit e-mail exchange between him and the defendant to the therapy group leader. He did so anonymously and under the guise of a "concerned friend."[4] The therapy group leader forwarded the messages to the State police, and an investigation ensued. Because Sawyer did not reveal that he was the author of the messages, the investigation proceeded with the understanding that the defendant had been communicating with a child. Shortly after the investigation began, the defendant's probation officer

---

[4] Sawyer testified that he identified himself as a "concerned friend" to obscure his identity from the group leader and make it seem like a friend of the defendant's had discovered the e-mail exchange. He further testified that he and the defendant were not friends.

issued a notice of probation violation to him, stating that the defendant had violated his probation by having unsupervised contact with a child under sixteen years old. The defendant was detained without bail pending his probation violation hearing.

The defendant does not contest that he was the author of the advertisement or that he used his personal e-mail address to post the advertisement on Craigslist. Furthermore, the e-mail address that he used to post the personal advertisement at issue here is the same address that the defendant had used to post a similar personal advertisement in 2009, which led to his prior conviction of enticement of a child.[5]

At some point during the investigation, the police discovered that Sawyer had been the person corresponding with the defendant, not a thirteen year old boy. A State police trooper interviewed Sawyer, and Sawyer admitted to authoring the e-mail messages. During this interview, the trooper also inquired into Sawyer's criminal background. Sawyer acknowledged

---

[5] In the prior case, the defendant had posted a personal advertisement on the Internet Web site Craigslist. An undercover police officer replied to the defendant's advertisement and pretended to be a thirteen year old boy. The defendant and the person whom he believed was a thirteen year old boy engaged in a sexually explicit e-mail exchange. The defendant set up a meeting with the purported child at a restaurant, and he was subsequently arrested when he arrived. As discussed infra, this was properly admitted, not for propensity purposes but to rebut the defendant's defense that he was aware that he was speaking with an adult when he attempted to meet the purported thirteen year old boy in this case.

that he had been charged with statutory rape and pleaded guilty to the lesser charges of indecent assault and battery on a child and child enticement. Sawyer explained that when he was eighteen years old, he began dating a person whom he believed to be sixteen years old. Eventually, that individual revealed to Sawyer that he was actually only thirteen years old; Sawyer immediately ended the relationship. Sawyer was adamant that the situation was a misunderstanding. Moreover, Sawyer stated that he has no sexual interest in children.

After police discovered that Sawyer was the author of the messages purporting to be from a child, the Commonwealth amended the defendant's notice of probation violation to reflect that he violated his probation by committing the crime of child enticement. At the defendant's probation violation hearing, the defendant's theory of defense was that he knew that he had been communicating with Sawyer, not a thirteen year old boy, and the two men were engaging in a fantasy role play. The defendant argued that he did not have the requisite intent to commit the crime of child enticement because he knew that he was not communicating with a child. In support of this theory, the defendant presented testimony from a digital forensic analyst, who examined the messages at issue, which had been recovered from the defendant's cellular telephone. The analyst opined that it was possible, despite the e-mail privacy setting, that

"David Sawyer" may have appeared as the sender of the messages. Based on the way they were saved, the analyst conceded that he could not determine whether the defendant actually saw Sawyer's name or the anonymized e-mail address when the defendant received the messages.

Throughout the probation violation hearing, the Commonwealth and defense counsel sought to elicit testimony concerning the substance of discussions that had occurred in the course of the sex offender group therapy sessions. On numerous occasions the judge expressed concern that statements made during group therapy sessions were protected by the psychotherapist-patient privilege. Defense counsel agreed with the judge that the privilege applied, but nevertheless sought to elicit testimony that Sawyer had told the therapy group about Sawyer's own convictions of indecent assault and battery on a child and child enticement. The judge ruled that he would not allow the defendant to testify about what Sawyer had said in group therapy without a waiver from Sawyer, the presumed privilege holder.[6]

---

[6] On the first day of the hearing, the judge initially stated that he would not allow Sawyer to testify about what was said during the group therapy sessions. However, as discussed infra, on the second day of the hearing the judge stated that he would allow Sawyer to testify about Sawyer's own statements during group therapy.

On the second day of the probation violation hearing, defense counsel began by reaffirming her belief, and the judge's concern, that the conversations that occurred during group therapy were privileged. Defense counsel again sought to admit testimony that Sawyer had told the therapy group about his own convictions for purposes of showing the defendant's state of mind. Defense counsel argued that although the privilege applied, Sawyer had waived it by speaking with the police and independently discussing his convictions. Defense counsel proffered that the testimony she intended to elicit from Sawyer would be consistent with what Sawyer told police about his convictions.[7] The judge reaffirmed his prior ruling that the defendant could not testify about what Sawyer had said during group therapy. However, the judge concluded that if Sawyer wanted to testify about his own statements during group therapy, that evidence would be admissible. Despite this ruling, defense counsel did not question Sawyer about what Sawyer had said during group therapy.

Based on the evidence presented, the judge concluded that the defendant had violated his probation by committing child enticement and sentenced the defendant to serve the balance of his remaining sentence.

---

[7] Defense counsel presented a transcript of the pertinent portion of Sawyer's interview with police in support of the proffer.

Discussion.  Although this case appears to raise the issue whether the psychotherapist-patient privilege applies to group therapy, the record here does not provide an adequate basis for this court's determination whether, and to what extent, the psychotherapist-patient privilege applies in that context.[8] Assuming, without deciding, that the psychotherapist-patient privilege applies to group therapy, no evidence was presented to establish that the privilege would have been applicable here. The psychotherapist-patient privilege only applies where the therapy is administered by a "psychotherapist," as that term is defined by G. L. c. 233, § 20B.  Here, there was no evidence concerning the group leader's qualifications or whether that person met the statutory definition of a psychotherapist.  See

---

[8] The course of the proceedings and the discussion of the potential application of the privilege during the hearing clearly illustrate why the record before us is inadequate to address the applicability of the privilege.  Most notably, defense counsel represented to the judge on several occasions that the privilege indeed applied in this case, despite the fact that the privilege had not been invoked, but defense counsel nevertheless sought to admit this testimony, arguing that Sawyer had waived any such privilege.  Simply stated, the legal argument advanced by the defendant at the hearing concerning the contours of the psychotherapist-patient privilege cuts against the defendant's personal interest and his argument now on appeal.  Even setting aside that substantial hurdle, as discussed infra, the record is inadequate for this court to consider whether, and to what extent, the psychotherapist-patient privilege applies to group therapy.  We further note that here it was the defendant who assumed that the privilege applied while simultaneously arguing against it.  Given these peculiarities, we leave for another day whether the psychotherapist-patient privilege proscribed by G. L. c. 233, § 20B, applies to group therapy.

id. Moreover, similar to other statutory and common-law privileges that are not self-executing, the psychotherapist-patient privilege must be invoked or asserted by the privilege holder. See Commonwealth v. Oliveira, 438 Mass. 325, 331 (2002) ("some action by the patient or client is necessary to 'exercise' the privilege"); Mass. G. Evid. § 503 (2018). The potential privilege holder in this case, Sawyer, did not invoke the privilege. Instead, the judge was concerned that the privilege applied here and ruled that the defendant could not testify about what Sawyer had said during group therapy. Even if we were to assume that the privilege applied to group therapy, the judge erred in concluding that the privilege required the exclusion of certain evidence because these prerequisites were not satisfied.

In the defendant's view, the erroneous exclusion of evidence concerning what Sawyer had said to the therapy group about his own convictions violated the defendant's due process right to present a defense at his probation violation hearing. See Commonwealth v. Kelsey, 464 Mass. 315, 322 (2013) ("right to present a defense in probation revocation proceedings . . . is parallel to, but not coextensive with, the right to present a defense at trial"). However, we are mindful that a "defendant is not necessarily deprived of the right to present his theory of defense simply because the judge excludes a piece of evidence

supporting such theory." Commonwealth v. White, 475 Mass. 724, 743 (2016), quoting Commonwealth v. Jones, 464 Mass. 16, 19 n.5 (2012). Accordingly, a claim that evidence was erroneously excluded does not constitute a per se violation of the defendant's constitutional right to present a defense. See Commonwealth v. Vardinski, 438 Mass. 444, 449 n.11 (2003), quoting Commonwealth v. McAfee, 430 Mass. 483, 491 n.3 (1999) ("Evidentiary rules of exclusion do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes that they are designed to serve'"). Because the defendant did not object to the judge's conclusion that the psychotherapist-patient privilege applied here, and in fact argued that the privilege did apply, we review the defendant's claimed error to determine whether exclusion of certain evidence created a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

The core of the defendant's argument is that testimony about what Sawyer said in group therapy about his own convictions would have been probative of the defendant's state of mind. According to the defendant, evidence of his state of mind -- that the defendant was aware of Sawyer's sexual proclivities -- would have supported the theory that the defendant knew he was exchanging e-mail messages with Sawyer,

rather than a thirteen year old boy. This argument fails for a number of reasons.

First, the defendant was not foreclosed from eliciting the testimony. The record shows that, although the judge ruled that the defendant could not testify about what he had heard Sawyer say in group therapy, the judge did not foreclose the defendant from questioning Sawyer on cross-examination about what Sawyer had said in group therapy sessions. Indeed, on several occasions the judge stated that Sawyer would be permitted to testify about what he had told the group concerning his convictions. However, defense counsel chose not to question Sawyer about what he had said in group therapy.[9] This may have been a strategic decision by defense counsel, who stated that

---

[9] Rather, the defendant took the position that since Sawyer disclosed to the State police trooper similar information to what he had said in group therapy, the privilege was waived. This is not our law. See Mass. G. Evid. § 523 (c) (1). The fact that Sawyer reiterated factual information that he previously had discussed during group therapy, and which existed independent of the group therapy, would not have undermined the psychotherapist-patient privilege had it applied here. See Robinson v. Commonwealth, 399 Mass. 131, 135 (1987) (that some information patient communicated to psychiatrist was later repeated to others is irrelevant for purposes of waiver analysis). We have held that the mere fact "[t]hat a client tells a friend what he also tells his attorney in no way undermines the attorney-client privilege as to what was communicated to the attorney." Id. See generally Commonwealth v. Goldman, 395 Mass. 495, 499-500, cert denied, 474 U.S. 906 (1985) (witness who testifies as to specific content of privileged communication may waive privilege, but witness does not waive privilege by testifying as to events which may have been topic of privileged communication).

she expected that Sawyer would testify consistently with what he had told the trooper about his own convictions. However, much of Sawyer's statement to the trooper did not inure to the defendant's benefit or support the defendant's theory of defense, where Sawyer said that his convictions arose from a misunderstanding and that he did not have any sexual interest in children.

Second, even if this testimony had been admitted, it had minimal probative value. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." Mass. G. Evid. § 401 (2018). See Commonwealth v. Gerhardt, 477 Mass. 775, 782 (2017). Relevant evidence "need not establish directly the proposition sought; it must only provide a link in the chain of proof" (citation omitted). Commonwealth v. Sicari, 434 Mass. 732, 750 (2001), cert. denied, 534 U.S. 1142 (2005).

Defense counsel sought to elicit testimony that Sawyer had told the sex offender therapy group that he had been convicted of indecent assault and battery on a child and child enticement. The defendant claims that this testimony was relevant to show the defendant's state of mind because evidence that Sawyer had told the therapy group about his convictions was indicative of Sawyer's sexual proclivities. According to the defendant, his

presumed knowledge of Sawyer's sexual proclivities would have been relevant to establish the defendant's knowledge that he was corresponding with Sawyer, not a thirteen year old boy, throughout the e-mail exchange.

The nexus between the defendant's knowledge of Sawyer's convictions and the contention that he knew he was communicating with Sawyer throughout the e-mail exchanges is attenuated at best, and depends on multiple unsupported inferential leaps. Indeed, the defendant has failed to articulate clearly how evidence of Sawyer's convictions would have informed the defendant that he was communicating with Sawyer. Critically, Sawyer's convictions did not involve the solicitation of an underage person on the Internet or role playing, particularly role playing where Sawyer assumed the role of a child. Moreover, as stated supra, defense counsel expected that Sawyer's statement in group therapy would be consistent with what he had told police: that he had no sexual interest in children.

Third, the defendant's claim of an infringement on his right to present a defense is further belied by the fact that he presented other compelling evidence that was more probative of his theory of defense. The defendant submitted evidence that supported an inference that he knew Sawyer's full name, because the sign-in sheet at the group therapy meetings listed each

participant's full name and was open for each of the people to see. This evidence, coupled with the defense expert's opinion that it was possible that the defendant saw the name "David Sawyer" as the sender of the e-mail messages, permitted the inference that the defendant knew it was Sawyer from the therapy group who had sent him the messages. Although these potential inferences did not ultimately carry the day, they were more probative of the defendant's theory of defense than the testimony that is the subject of this appeal. Accordingly, not only was the defendant not prevented from presenting a defense, he likely presented the best defense available to him, so exclusion of the evidence at issue did not create a substantial risk of a miscarriage of justice.

We are further convinced that the erroneous application of the psychotherapist-patient privilege did not create a substantial risk of a miscarriage of justice because the Commonwealth presented overwhelming evidence to establish that the defendant committed the crime of child enticement. Sawyer testified that he and the defendant had never communicated outside group therapy sessions, and that he never used his full name in those sessions or provided it to any member of the group. There also is nothing in the substance of the sexually explicit e-mail exchange indicating that the defendant was cognizant that he was speaking with anyone other than a thirteen

year old boy.  The defendant confirmed on multiple occasions that he was communicating with a thirteen year old boy, expressed a desire to perform sexual acts on the boy, and requested a nude photograph of the boy.  Furthermore, the defendant's expert conceded that he could not determine conclusively whether the defendant actually saw Sawyer's full name when he received the e-mail messages or whether that was merely a function of how the cellular telephone saved the messages.

To show the defendant's intent and rebut his contention that he was engaged in a role play, the Commonwealth also submitted evidence that the defendant had been convicted of a prior act of enticing a child through a Craigslist personal advertisement.  See note 5, supra.  Similar to the circumstances here, the defendant had been communicating with an adult (an undercover police officer) who pretended to be an underage child.  This evidence was properly admitted for the purpose of establishing the defendant's state of mind and to rebut the defendant's claim that he was aware that he was not communicating with a child.  See Mass. G. Evid. § 404 (b) (2018).

Conclusion.  We affirm the judge's conclusion that the defendant violated his probation.

So ordered.