NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-957

COMMONWEALTH

vs.

MATTHEW ROCHA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Matthew Rocha, argues that a Superior Court judge improperly admitted at a probation violation hearing a recording of a 911 call.  The defendant contends that the caller related statements of the victim that were inadmissible double hearsay.  He also contends that the caller's statement that the victim was "constantly getting beat up by her boyfriend," as well as an exhibit documenting the recent dismissal of domestic violence charges against the defendant in Rhode Island, were improper bad act evidence.  Because the judge did not abuse her discretion in concluding that the 911 call was substantially reliable and the evidence was admissible, we affirm.

Background.  As of February 28, 2021, the defendant was on probation on a Superior Court conviction for kidnapping, subject to conditions including that he obey all laws.  After a notice

of probation violation issued alleging that he had been charged with assault and battery on a family or household member and assault on a family or household member, a final probation violation hearing was held in the Bristol County Superior Court.

At the hearing, the victim testified that on February 28, 2021, she and the defendant had a nonviolent verbal argument. The victim testified that she was upset, went outside to her truck, and, from her truck, telephoned a friend in North Carolina to "vent[]." Immediately after that call the friend called 911 to report that the victim had been assaulted. The victim denied telling the 911 caller that the victim had any injuries or that the defendant had assaulted her, but she acknowledged that soon after she hung up with the friend the police arrived. Shown a photograph taken of her that night, the victim explained that her face was extremely puffy from crying and that she had probably bitten her own lip from being upset.

When the Commonwealth offered the recording of the 911 call, the defendant objected on grounds that the caller was not a percipient witness to the assault and that the call contained hearsay. The judge admitted the recording, noting that the victim had already testified that she had telephoned the friend who made the 911 call; the judge stated that she would determine from the contents of the call whether any hearsay was substantially reliable. The victim then identified the voice of

2

the 911 caller as that of her friend.  In the 911 call, the caller identified herself, said she was calling from North Carolina, and stated that she just got off the phone with the victim, "who is constantly getting beat up by her boyfriend."  The caller gave the victim's name, address, and telephone number, and informed police that the victim was sitting in a cranberry-colored truck in the driveway of that address.  The caller also told the dispatcher that the victim had disclosed that her boyfriend, whose name was "Matt," had "choked her and messed up her face," and that the victim "has marks on her face right now."  The caller said that the victim's boyfriend was on some kind of probation, and that the victim had recently "dropped the charges" against him in Rhode Island "for the same thing."

Fall River Police Officer Samuel Chace responded to the address reported by the 911 caller and found the victim locked in a red pickup truck.  The victim was "startled," "evasive," and "nervous," kept looking at the window of her apartment, and said something about consequences from her boyfriend, so the officer brought her a short distance away to speak to her.  The victim looked like she had been crying and had a bruised lower lip, redness around her neckline, blood around the crown of her nose, and watery eyes.  The victim declined medical treatment and denied that a physical altercation had occurred.  The victim

did tell Officer Chace that a charge against the defendant in Rhode Island had been "dropped."[1]

Officer Chace then telephoned the 911 caller, who said that she was in fear for the victim's safety and that the victim and defendant had been in a physical altercation a few minutes earlier. After Officer Chace spoke to the 911 caller, officers knocked on the apartment door. The defendant opened the door; he was naked, had no visible injuries, and seemed confused. The apartment was "a mess," with food burning on the stove.

The judge concluded that the Commonwealth had shown by a preponderance of the evidence that the defendant had violated his probation by committing assault and battery on a family or household member. On the kidnapping conviction, the judge revoked the defendant's probation and sentenced him to two years in State prison.

Discussion. 1. Hearsay. The defendant argues that the judge improperly relied upon the recording of the 911 call in which the caller relayed the victim's statements. He contends that the 911 caller lacked personal knowledge of the events she reported to the dispatcher, and that her statements contained "double hearsay" inadmissible under any hearsay exception. The

---

[1] About three weeks earlier in a Rhode Island court, domestic violence charges against the defendant had been dismissed by the prosecution.

4

defendant further argues that the caller's statements were not sufficiently reliable, and without them there was an inadequate basis for the judge to find that he violated his probation.

In probation violation proceedings, the Commonwealth bears the burden of proving by a preponderance of the evidence that the probationer violated the terms and conditions of probation. See Commonwealth v. Bruno-O'Leary, 94 Mass. App. Ct. 44, 47 (2018). At a probation violation hearing, a judge may rely on hearsay evidence that has "substantial indicia of reliability." Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 668 (2019). In determining whether hearsay is substantially reliable, the judge may consider:

> "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity."

Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016). See Commonwealth v. Costa, 490 Mass. 118, 125 (2022). We review the judge's assessment of the reliability of that evidence for an abuse of discretion. See Ogarro, supra.

5

a. <u>Caller's report to 911 dispatcher</u>.  The judge did not abuse her discretion in concluding that certain statements in the 911 call were substantially reliable.  Specifically, the judge found substantially reliable the following statements: that the caller was calling from North Carolina; that the victim lived at a certain address; that the victim and the caller had spoken on the telephone until about a minute before the 911 call; that the victim was very upset and was crying so much that she had trouble speaking; that the victim was hiding in her truck in the driveway; and that the victim had said that she and her boyfriend, Matthew, had been involved in a physical altercation and he had choked her and "messed up" her face.[2]

The judge did not abuse her discretion in concluding that the caller's statements in the 911 call were substantially reliable.  The victim authenticated the voice of the 911 caller as that of her friend.  The judge found that the 911 caller made the statements based on the caller's personal knowledge of her conversation with the victim, which was close in time to the assault and battery; the judge also found that the 911 caller was a disinterested party.  The caller's statements were corroborated by the victim's testimony that she had telephoned

---

[2] The 911 caller reported that she heard the victim's boyfriend "threatening to kill her," but the judge did not find that statement substantially reliable because the caller had never met the defendant and could not identify his voice.

6

the 911 caller that night and was very upset and "venting." They were also corroborated by Officer Chace's observations of the victim, just as the 911 caller had described, parked in a red pickup truck outside her apartment with visible injuries, and by evidence that domestic violence charges against the defendant in Rhode Island had recently been dismissed. Officer Chace's telephone call to the 911 caller further corroborated the caller's statements to the dispatcher.

"In assessing whether the hearsay evidence is reliable, a hearing judge may consider . . . whether the evidence is based on personal knowledge or direct observation" (emphasis added). Hartfield, 474 Mass. at 484. Although the 911 caller was in North Carolina and the defendant and the victim were in Massachusetts, the 911 caller's statements met this requirement. From the amount of factual detail supplied by the 911 caller, the judge could find that the caller had learned the information from the victim. Where the victim herself testified, authenticated the 911 caller's voice, and corroborated many of the 911 caller's statements, the judge could conclude that the statements in the 911 call were substantially reliable. Simply because the 911 caller was not a percipient eyewitness to the assault and battery did not mean that her statements in the 911 call about what the victim had said were not based on her personal knowledge. Contrast Commonwealth v. Grant G., 96 Mass.

App. Ct. 721, 726 (2019) (Department of Children and Families case worker's statement that juvenile "ha[d] been AWOL from the program several times" not based on case worker's personal knowledge or corroborated by other evidence); Commonwealth v. Hamilton, 95 Mass. App. Ct. 782, 788-789 (2019) (multilevel hearsay not substantially reliable where hearsay statements were internally inconsistent and declarant had no direct personal knowledge).

The judge also did not abuse her discretion in concluding that the 911 caller was a disinterested witness. Despite the fact that the caller had been friends with the victim for twenty years, she did not know the defendant and there was no evidence presented that she had a bias against him. Contrast Commonwealth v. Wilson, 47 Mass. App. Ct. 924, 925-926 (1999) (hearsay insufficiently reliable, where declarant had motive to retaliate against defendant). Further, the caller called 911 against the wishes of the victim, and as a result their friendship ended.

b. Victim's statements to 911 caller. The judge also concluded that the victim's statements to the 911 caller on the phone that evening were substantially reliable because they qualified as excited utterances, noting that "[the victim] being upset in the moment that she makes those phone calls provides inherent reliability as to their trustworthiness in

8

circumstances where she was still under the stress of the event that had occurred."  The defendant contests that finding.

"A statement meets the test for admissibility as an excited utterance if (1) there is an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer, and (2) if the declarant's statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought" (quotations omitted).  Commonwealth v. Baldwin, 476 Mass. 1041, 1042 (2017).  See Mass. G. Evid. § 803(2) (2022).

The 911 caller described the victim as very upset during their call, that she was crying so hard she had trouble speaking.  The victim herself testified that she was "extremely upset" and "venting" when she spoke to the 911 caller.  The judge did not abuse her discretion in concluding that the victim's statements related by the caller in the 911 call were substantially reliable, as required for admissibility at a probation violation hearing.  See Ogarro, 95 Mass. App. Ct. at 668-669.  See also Commonwealth v. Napolitano, 42 Mass. App. Ct. 549, 557 (1997) (jury could credit excited utterance over trial testimony of victim recanting accusation; "Excited utterance hearsay has been judicially viewed as of such substantial trustworthiness that it may justifiably carry more

9

weight . . . than a . . . statement offered [subsequently] in the relative calm of the courtroom" [quotation omitted]).

2. Prior bad acts. The defendant argues that the admission of the 911 caller's statement that the victim was "constantly getting beat up by her boyfriend," and the case summary for the dismissed Rhode Island charges, were improper bad acts evidence. The defendant did not object to the admission of this evidence below, so we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Pickering, 479 Mass. 589, 596 (2018).

"Generally, evidence of a defendant's prior misconduct may not be admitted to show bad character or propensity to commit the crime charged." Commonwealth v. Montez, 450 Mass. 736, 744 (2008). "However, such evidence may be admissible, if relevant, to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." Commonwealth v. Moran, 101 Mass. App. Ct. 745, 748 (2022), quoting Commonwealth v. Barrett, 418 Mass. 788, 793-794 (1994). The judge has broad discretion to make admissibility determinations. Moran, supra at 750.

Admission of the 911 caller's statements and the Rhode Island case summary did not create a substantial risk of a miscarriage of justice. That evidence was admissible to corroborate the 911 caller's statement that the victim had said

10

that the defendant's Rhode Island charges had recently been dismissed, about which the victim also testified. Further, that evidence was relevant on the issue of the victim's credibility. See Commonwealth v. Butler, 445 Mass. 568, 576 (2005) (fact finder entitled to consider evidence of hostile relationship between defendant and victim to adequately assess victim's credibility).

Conclusion. The judge did not abuse her discretion in relying at the probation violation hearing on the substantially reliable hearsay statements contained in the recording of the 911 call, and no substantial risk of a miscarriage of justice arose from admission of evidence of the dismissal of the defendant's Rhode Island charges.

April 1, 2021 order revoking probation affirmed.

May 25, 2021 order denying motion for reconsideration affirmed.

By the Court (Ditkoff, Singh & Grant, JJ.[3]),

Joseph F. Stanton

Clerk

Entered: February 15, 2023.

---

[3] The panelists are listed in order of seniority.

11