## COMMONWEALTH *vs.* THOMAS HAYES.

Evidence of finding a pitcher and a quart measure containing whiskey, and tumblers smell-
ing of whiskey, on a shelf under a bar, or counter, in a room opening out of the defend-
ant's grocery store, coupled with evidence of the defendant's statement "that he had
given up selling, and, when the first of May came, he should not take out another license;
that he did not know why they should be so hard upon him; that he did not see why
he could not do as another man had, pay a fine and have no more about it," will author-
ize a finding that the liquors were kept by him for sale; and will justify a charge to the
jury that "whether the liquor found in the defendant's possession was kept with a view
of selling it, was to be determined from the circumstances which attended its keeping;
that the place where it was kept, and the fact that it was kept with other merchandise,
and as a part of it, would be circumstances to show that it was thus kept; if, in going
into a grocery store, you saw a chest of tea among other groceries, though you may know
that the owner personally used and consumed tea, you would not draw the same conclu-
sion in relation to that chest of tea which you would draw from finding a similar article
in his dwelling-house, and among stores kept for family use"; and such a charge is not
a charge upon the facts.

COMPLAINT to the District Court of East Norfolk, alleging
that the defendant at Quincy, in the county of Norfolk, on Feb-
ruary 5, 1873, did keep intoxicating liquors other than ale, por-
ter, strong beer, lager beer and cider, with intent to sell in viola-
tion of law.

At the trial in the Superior Court, before *Brigham*, C. J., the
government offered testimony that the defendant kept a grocery
store in Quincy; that opening out of the store, on the same floor,
was a room with a bar, or counter, having a shelf under it, a table
and some chairs; that on the evening of February 5 there was
found upon the shelf a broken pitcher containing a small quantity

of whiskey, a tin quart measure about half full of whiskey, another pitcher holding ale, and some large and small tumblers, two of the small tumblers smelling of whiskey. No other liquor was found upon the premises. Police officers, witnesses for the prosecution, testified to conversations with the defendant, in which he said, "that he had given up selling, and that when the first of May came, he should not take out another license; that he did not know why they should be so hard upon him; that he did not see why he could not do as another man had, pay a fine and have no more about it." This was all the evidence for the Commonwealth.

The defendant testified that he had bought the liquor found that evening; that he used liquor himself, and purchased this for his own use; that he took some of it with the man of whom he purchased, using the tumblers above spoken of; that he had not sold any of it, and did not intend to sell any of it, and that he had not sold any liquor since he had been acquitted for selling liquor the September before.

Upon this testimony, the defendant asked the court to instruct the jury that the intent to sell contrary to law must be proved beyond a reasonable doubt by the ordinary rules of evidence in criminal cases; that the possession and use of intoxicating liquors was not prohibited by statute; that the mere possession of liquor would not authorize the jury to find it was kept with intent to sell; and that the jury must be satisfied from the circumstances that a sale of liquor had actually been made, or that the defendant, on the day of seizure, was engaged in the business of selling liquor, or intended to sell or to engage in the business, before they would be authorized to find that the liquors in question were kept by him for sale.

The court declined to give the instructions asked for, and instructed the jury that the charge was a charge of keeping the liquor to which the testimony related with an intent to sell it; that it was not necessary that the government should prove that the defendant actually sold liquor, but that it was necessary to prove that it was kept by him as merchandise; that the law did not meddle with what he kept for his own use, whatever its quan-

tity or place of deposit; that whether the liquor found in the defendant's possession was kept with a view of selling it, was to be determined from the circumstances which attended its keeping; that the place where it was kept, and the fact that it was kept with other merchandise, and as part of it, would be circumstances which would tend to show that it was thus kept: " If, in going into a grocery store, you saw a chest of tea among other groceries, though you may know that the owner personally used and consumed tea, you would not draw the same conclusion in relation to that chest of tea which you would draw from finding a similar article in his dwelling-house, and among stores kept for family use. The place and association might lead to the inference that it was kept as merchandise and not for use. The circumstances relied on by the government are that the whiskey was found in a place and measures in which it is not ordinarily kept by men for their personal use, and it is claimed that they show that it was as much intended and kept for sale as the ale in the pitcher found at the same time and place. The government also relies upon conversations which the defendant does not deny that he had, and their significance in relation to the other circumstances is for you, and by you to be determined. On the one side there are the conversations, the place of finding of the liquors, and the surroundings, upon which the government claims that if a man had come in and asked for whiskey, the defendant was ready to sell it or a part of it to him. On the other side, the defendant testifies that this whiskey was procured for his personal use, and kept there for that purpose and no other ; that he had sold none of it, and had no intention of selling it. Taking the conversations and place of finding and surroundings relied upon by the Commonwealth on the one hand, and the defendant's denials on the other hand, you will say whether his testimony leaves your minds in reasonable doubt as to his intention to sell. If it does, you will acquit him; if not, you will convict. I will say farther that, in and of itself, possession of liquor, independent of such associations or surroundings as indicated that it was kept for sale, would authorize no inference of intent to put it to an unlawful use."

The jury returned a verdict of guilty. To the refusals to instruct as prayed for, and to the instructions as given, the defendant alleged exceptions.

*W. E. Jewell*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

AMES, J. We do not find that the instructions given at the trial were in conflict with the recent decision in *Commonwealth* v. *Intoxicating Liquors*, 105 Mass. 595, 598. It is true that the mere possession of intoxicating liquor is not forbidden by any statute, and that the whole criminality consists in the intent to sell it in violation of law. But such intent may, and generally must, be proved by circumstantial evidence. The question as to the defendant's intent was submitted to the jury with the explanation that mere possession, "independent of such associations or surroundings as indicated that it was kept for sale, would authorize no inference of intent to put it to an unlawful use." We see no ground for the objection that the burden of proof was placed upon the defendant, or that the court assumed to charge upon the facts. The jury were told that unless the unlawful intent were proved beyond reasonable doubt, the defendant was to be acquitted. *Exceptions overruled.*