NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12514

COMMONWEALTH  vs.  SHEA BRAUNE.


Essex.     October 4, 2018. - January 29, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Money Laundering.  Statute, Construction.  Words, "Designed to
     conceal."



Indictments found and returned in the Superior Court Department on December 30, 2015.

The cases were tried before Joshua I. Wall, J.

The Supreme Judicial Court granted an application for direct appellate review.


Alexandra H. Deal for the defendant.
Philip A. Mallard, Assistant District Attorney, for the Commonwealth.


LOWY, J.  The defendant, Shea Braune, was convicted of receiving stolen property and money laundering after she and her girlfriend, Romi Kimell, used over $300,000 in cash that Kimell had stolen from her mother and stepfather to fund a lavish

lifestyle.  In an ill-fated attempt to cover their tracks,
Kimell gave a substantial amount of the stolen cash to Braune,
who deposited it into her checking account through a series of
transactions, each under $10,000, later claiming to have
received the money in an inheritance.  A subset of these
deposits forms the basis for Braune's money laundering
conviction.  On appeal, Braune argues that the evidence was
insufficient as a matter of law to establish "concealment" money
laundering, in violation of G. L. c. 267A, § 2 (2) (ii) (A),
where she openly deposited the money into her checking account
using her own name.  Because we conclude that the evidence was
sufficient for a rational jury to conclude that Braune's
deposits were designed, in whole or in part, to conceal the
nature, location, source, ownership, or control of the stolen
funds, we affirm.

Background.  Viewing the evidence in the light most
favorable to the Commonwealth, the jury could have found the
following facts.  In the fall of 2013, when the victims, James
and Janice Welling,[1] went to stay at their Florida home for the
winter, they left over $300,000 in cash (packaged in stacks of
fifty and one hundred dollar bills), along with a few items of
Janice's jewelry, in a box that was taped shut and stored in a

---

[1] For clarity, we refer to the couple either collectively as
the Wellings, or individually by their first names.

locked closet in the master bedroom of their North Andover home.[2] The only other person who knew about the box was Janice's daughter, Kimell.

Kimell had enjoyed a close relationship with her mother and James, who was Kimell's stepfather, and the Wellings had provided significant financial support to Kimell throughout her life. However, the relationship had soured shortly before the time in question.[3] While the Wellings were in Florida, Kimell began to remove cash from the box in the Wellings' master closet. Kimell provided some of the cash to Braune. Braune then made a series of deposits into her checking account, each under $10,000,[4] using the stolen money.

At a certain point, Kimell took the remaining contents of the box and replaced them with a duffel bag full of copy paper, resealing the box and restoring it to its place in the closet.[5]

---

[2] According to James, the box contained anywhere from $300,000 to $600,000, possibly more.

[3] James had made unwelcome sexual advances toward Kimell during an approximately eighteen-month period beginning in 2011, which Kimell had rejected. In addition, James had expressed disapproval of Kimell's romantic relationship with Braune.

[4] The jury heard evidence that cash transactions over $10,000 must be reported to the Federal government. See 31 U.S.C. § 5313(a) (2012); 31 C.F.R. § 1010.311 (2013).

[5] The jury saw date-stamped, security-camera footage of Kimell leaving the Wellings' house in North Andover on April 27, 2014, with a large black garbage bag over her shoulder.

Kimell informed her mother that she and Braune were moving to California and that Braune had received a large inheritance. During and after the move to California, Braune's pattern of making successive, large cash deposits -- each under $10,000 -- continued, as did a pattern of lavish spending by Kimell and Braune.[6]

The Wellings did not discover that the cash and jewelry were missing until October 2014, and did not immediately report the incident to police.  Instead, they confronted Kimell about the missing money, and when she denied any involvement, they hired a private investigator to look into the matter.

In July of 2015, Kimell filed a petition for bankruptcy in a Federal bankruptcy court in California.  James intervened in that proceeding, and his attorney deposed Kimell and Braune.  In their sworn deposition testimony, which was later entered as an exhibit in the criminal trial in Massachusetts, Kimell and Braune reiterated their claim that Braune had used money from an inheritance to support their lavish lifestyle.[7]

---

[6] The two stayed at expensive hotels, took trips to Paris, Las Vegas, and Aruba, and purchased a new vehicle, among other large expenditures.

[7] Braune claimed to have received $75,000 in cash as an inheritance from her grandfather in 1998.  She further claimed that she kept the money in a box and did not spend any of it until 2014, when she began to use it, along with about $15,000 in savings and other inheritance money, to pay for the expenses she and Kimell incurred during and after their move to

Shortly after the defendant filed the petition for bankruptcy, the Massachusetts State police worked with law enforcement officials in California to execute a search of the home that Braune and Kimell shared in San Diego. Among other things, the police recovered, from Kimell's bedroom, jewelry matching that which Janice had reported missing; and from the closet in Braune's bedroom, a total of $130,110 in United States currency, stored in a backpack and a cardboard box and packaged mainly in stacks of fifty and one hundred dollar bills, consistent with James's description of the missing money.

Discussion. In assessing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial evidence may be sufficient to prove guilt beyond a reasonable doubt, Commonwealth v. Grandison, 433 Mass. 135, 141 (2001), and the inferences drawn from such evidence "need not be necessary and inescapable, only reasonable and possible." Commonwealth v.

---

California. However, Braune and Kimell's spending during the relevant time period exceeded $250,000, not including over $130,000 in cash that the police later recovered from Braune.

Goddard, 476 Mass. 443, 449 (2017), quoting Commonwealth v.

Jones, 432 Mass. 623, 628 (2000).

The Massachusetts money laundering statute, G. L. c. 267A,

§ 2, provides in relevant part:[8]

> "Whoever knowingly . . . (2) engages in a transaction
> involving a monetary instrument or other property
> known to be derived from criminal activity . . . (ii)
> knowing that the transaction is designed in whole or
> in part either to:  (A) conceal or disguise the
> nature, location, source, ownership or control of the
> property derived from criminal activity; or (B) avoid
> a [Federal or State] transaction reporting requirement
> . . . shall be guilty of the crime of money laundering
> . . . ."

Braune was convicted of concealment money laundering in

violation of G. L. c. 267A, § 2 (2) (ii) (A).[9]

---

[8] The first prong of G. L. c. 267A, § 2, omitted in the text, deals, broadly speaking, with "transportation" money laundering, rather than "transaction" money laundering.  Under the umbrella of "transaction" money laundering, there are two broad subcategories:  § 2 (2) (i), omitted in the text, which deals with "promotion" money laundering; and § 2 (2) (ii), reproduced in the text, which itself has two subparts:  subpart (A), which deals with "concealment" money laundering; and subpart (B), sometimes referred to as the "structuring" prong, which deals with transactions designed to avoid a State or Federal reporting requirement.

[9] The Commonwealth originally proceeded under subparts (A) and (B) of G. L. c. 267A, § 2 (2) (ii).  But after the trial judge found that there was insufficient evidence under subpart (B) (the "structuring" prong) as to any transaction occurring prior to the date that Kimell was recorded leaving the house with the garbage bag, the Commonwealth elected to proceed under subpart (A) (the "concealment" prong) as its sole theory of liability.

Here, at least three forms of evidence typically associated with concealment money laundering were present: (1) the false statements made by the defendant and Kimell, initially to Kimell's mother and then later in sworn deposition testimony, that the money was part of an inheritance that Braune received from her grandfather, suggested an intent to conceal; (2) the structure of the defendant's deposits, which were staggered over time and confined to amounts below the reporting threshold, supported an inference of a design to conceal; and (3) the use of the defendant as a third party to deposit the money supported an inference of an intent to distance the money from Kimell and the Wellings, in other words, an intent to conceal the nature, source, ownership, or control of the stolen funds.  As discussed below, the combination of these factors persuades us that the evidence was sufficient to establish a design to conceal under G. L. c. 267A, § 2 (2) (ii) (A).[10]

The language of § 2 (2) (ii) mirrors the language of the Federal money laundering statute, in particular its requirement that the defendant engage in the subject transaction "knowing that the transaction is designed in whole or in part . . . (i)

---

[10] We need not consider whether any one of these factors, in isolation, would be sufficient to convict.

to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law." 18 U.S.C. § 1956(a)(1)(B) (2012). Where, as here, our State statute "largely replicates" a cognate provision of Federal law, we consider the Federal courts' interpretation of the Federal statute "highly persuasive" in interpreting our own law. Commonwealth v. Eberhart, 461 Mass. 809, 815 (2012), quoting Commonwealth v. Colon, 81 Mass. App. Ct. 8, 12, 14 (2011).

In Cuellar v. United States, 553 U.S. 550, 556-557 (2008), the United States Supreme Court interpreted the "designed . . . to conceal" requirement of a neighboring provision of the Federal money laundering statute, 18 U.S.C. § 1956(a)(2)(B)(i), which applies to transportation money laundering rather than transaction money laundering.[11] More specifically, the Court addressed whether evidence that the defendant hid the proceeds

---

[11] Because the language of the "designed . . . to conceal" requirement in 18 U.S.C. § 1956(a)(2)(B)(i) is identical to that in § 1956(a)(1)(B)(i), United States Courts of Appeals have consistently held that the holding in Cuellar v. United States, 553 U.S. 550 (2008), applies equally to cases involving transaction money laundering under § 1956(a)(1)(B)(i). See, e.g., United States v. Faulkenberry, 614 F.3d 573, 586 (6th Cir. 2010); United States v. Cedeno-Perez, 579 F.3d 54, 60-61 (1st Cir. 2009), cert. denied, 558 U.S. 1127 (2010); United States v. Brown, 553 F.3d 768, 786 n.56 (5th Cir. 2008), cert. denied, 558 U.S. 897 (2009).

of illicit drug transactions in a secret compartment of a vehicle while transporting the funds across the border to Mexico was sufficient to establish a design to conceal.  Id. at 553-554, 561.

The Court observed that "when an act is 'designed to' do something, the most natural reading is that it has that something as its purpose."  Id. at 563-564.  Thus, in the context of concealment money laundering, "'design' means purpose or plan; i.e., the intended aim of the transportation."  Id. at 563.  Accordingly, the Court held that concealment money laundering "requires proof that the purpose -- not merely effect -- of the transportation was to conceal or disguise a listed attribute" of the funds.  Id. at 567.

In so holding, the Cuellar Court rejected the proposition that the "designed . . . to conceal" element of the Federal money laundering statute requires the prosecution "[to] prove that the defendant attempted to create the appearance of legitimate wealth."  Id. at 557.  Rather, in Cuellar, "what the Government had to prove was that [the defendant] knew that taking the funds to Mexico [i.e., the transportation] was 'designed,' at least in part, to conceal or disguise their 'nature,' 'location,' 'source,' 'ownership,' or 'control.'"  Id. at 562.

On the facts presented in Cuellar, the Court held that although evidence of the secretive manner in which the funds were transported "was plainly probative of an underlying goal to prevent the funds from being detected while he drove them from the United States to Mexico," id. at 566, that evidence was insufficient, standing alone, to establish that the transportation of the money was designed to conceal a listed attribute of the funds, especially where the government's own expert witness had testified that the purpose of the transportation was to compensate the leaders of the drug operation.  Id. at 566-568.  Simply put, "[t]here is a difference between concealing something to transport it, and transporting something to conceal it, . . . that is, how one moves the money is distinct from why one moves the money" (emphasis in original; quotation and citation omitted).  Id. at 566.

To be clear, "[c]oncealing or disguising a listed attribute need be only one of the purposes of the transportation [or transaction]."  Id. at 566 n.7.  See United States v. Faulkenberry, 614 F.3d 573, 586 (6th Cir. 2010), quoting 18 U.S.C. § 1956(a)(1)(B) (holding, post-Cuellar, in case of transaction money laundering under 18 U.S.C. § 1956[a][1][B], that concealment need not "be the only purpose of the transaction," where "the statute requires only that the

transaction be designed 'in whole or in part' to conceal" [emphasis in original]).  So it is with G. L. c. 267A, § 2 (2) (ii), which replicates the phrasing "in whole or in part" in its "designed . . . [to] conceal" requirement.[12]

Still, taken to the extreme, almost any transaction involving stolen funds could be characterized as designed, at least in part, to conceal a listed attribute of the funds, because every transaction takes the money one step further from its illicit source.  Cf. United States v. Valdez, 726 F.3d 684, 690 (5th Cir. 2013), quoting United States v. Willey, 57 F.3d 1374, 1384 (5th Cir.), cert. denied, 516 U.S. 1029 (1995) ("In one sense, the acquisition of any asset with the proceeds of illegal activity conceals those proceeds by converting them into a different and more legitimate-appearing form" [emphasis in original]).

Recognizing this, United States Courts of Appeals in several circuits have taken different approaches to grafting a workable limiting principle onto the "designed . . . to conceal" element of the Federal money laundering statute.[13]  We find the

---

[12] Thus, Braune's assertion, even if true, that the deposits were designed to allow the defendants to spend the money, does not end the inquiry.

[13] See, e.g., United States v. Cessa, 785 F.3d 165, 175-176 (5th Cir.), cert. denied sub nom. Trevino Morales v. United States, 136 S. Ct. 522 (2015), quoting Brown, 553 F.3d at 787 (holding, post-Cuellar, that "the government must demonstrate

United States Court of Appeals for the Sixth Circuit's formulation, which holds that concealment must be "an animating purpose" of the transaction, Faulkenberry, 614 F.3d at 586, to be instructive in this regard.  In such an analysis, "[c]oncealment -- even deliberate concealment -- as mere facilitation of some other purpose, is not enough to convict" (emphasis in original).  Id.  Rather, what the prosecution must show is that concealment was one of the purposes that motivated or "drove [the defendant] to engage in the transaction in the first place."  Id.  See Webster's Third New International Dictionary 85-86 (1969) (defining "animate" as "to move to action:  motivate, prompt, incite:  stir up").[14]

_____

that the charged transactions had the purpose -- not merely the effect -- of 'mak[ing] it more difficult for the government to trace and demonstrate the nature of th[e] funds'"); Faulkenberry, 614 F.3d at 586 (holding, post-Cuellar, that concealment must be "an animating purpose" of transaction); United States v. Johnson, 440 F.3d 1286, 1293 (11th Cir. 2006) (per curiam) (holding, pre-Cuellar, that "[t]here must be some evidence that the funds are more concealed after the transaction is completed than before"); United States v. Esterman, 324 F.3d 565, 573 (7th Cir. 2003) (holding, pre-Cuellar, that conviction under 18 U.S.C. § 1956[a][1][B][i] requires "concrete evidence" of intent to conceal, whether direct or circumstantial); United States v. Garcia-Emanuel, 14 F.3d 1469, 1474, 1476 (10th Cir. 1994) (identifying, pre-Cuellar, "two disciplines" that courts enforce with respect to Federal money laundering statute:  [1] "this is a concealment statute -- not a spending statute," and [2] "evidence of concealment must be substantial").

   [14] As noted above, this does not require that concealment be the sole purpose -- or even the dominant or primary purpose -- of the transaction.  See Cuellar, 553 U.S. at 566 n.7; Faulkenberry, 614 F.3d at 586.

Moreover, evidence of the "structure" of a transaction, that is, evidence of the manner in which a transaction was carried out, in terms of timing, amount, complexity, use of a third party, or some other relevant aspect, may be probative of whether the transaction had concealment as one of its purposes. See Faulkenberry, 614 F.3d at 586, quoting Cuellar, 553 U.S. at 565 (noting that because "'purpose and structure are often related[,]' . . . proof that a transaction was structured to conceal a listed attribute of the funds can yield an inference that concealment was a purpose of the transaction"). See also United States v. Elder, 682 F.3d 1065, 1072 (8th Cir. 2012) (evidence sufficient for concealment money laundering where, among other things, defendant "instruct[ed] his intermediary . . . to limit bank deposits to amounts less than $10,000"); Brown, 553 F.3d at 787 (evidence sufficient for concealment money laundering where "transactions were in cash so that they were not easily tracked" and "[m]ost deposits were below ten thousand dollars so as to avoid setting off any reporting requirements that might then lead to unwanted attention concerning the funds' nature"); United States v. Villarini, 238 F.3d 530, 533 (4th Cir. 2001) (evidence sufficient for concealment money laundering where defendant "did not deposit the entire $83,000 in a single bank transaction, and instead

made four transactions, each involving less than $3,000, at two-to-four-week intervals").

In sum, we conclude that to satisfy the requirement under G. L. c. 267A, § 2 (2) (ii) (A), that a transaction be "designed in whole or in part . . . [to] conceal or disguise the nature, location, source, ownership or control" of stolen funds, the Commonwealth must demonstrate that concealment was an animating purpose of the transaction. In other words, concealment must be proved to have been one of the purposes that motivated or drove the defendant to engage in the transaction, not merely an incidental attribute or effect of the transaction. In making this determination, evidence that the structure of the transaction served to conceal a listed attribute of the funds will be probative of whether concealment was an animating purpose of the transaction.

The defendant suggests that allowing evidence of structure to support an inference of a design to conceal improperly conflates subparts (A) (the "concealment" prong) and (B) (the "structuring" prong) of G. L. c. 267A, § 2 (2) (ii), and is contrary to legislative intent. We disagree. That the evidence used to convict under subparts (A) and (B) may overlap does not vitiate the Legislature's intent to create two separate crimes. This is so because, although evidence of structure, in and of itself, may be sufficient to show an intent to avoid a reporting

requirement under G. L. c. 267A, § 2 (2) (ii) (B), such evidence is probative, but generally not sufficient, standing alone, to establish a design to conceal under G. L. c. 267A, § 2 (2) (ii) (A).  Cf. Cuellar, 553 U.S. at 566 (noting that "secretive aspects" of transportation "may be circumstantial evidence that the transportation itself was intended to avoid detection of the funds," but that "its probative force, in that context, is weak"); Faulkenberry, 614 F.3d at 586 (noting that, while evidence of structure "can yield an inference" of design to conceal under 18 U.S.C. § 1956[a][1][B], it is not "enough" that transaction was "structured to conceal the nature of the illicit funds" [emphasis in original]); United States v. Garcia-Emanuel, 14 F.3d 1469, 1478 (10th Cir. 1994) (noting that evidence of "pattern of deposits," each under $10,000, would provide "straightforward" proof under § 1956[a][1][B][ii], and although inference is "considerably weaker" under § 1956[a][1][B][i], it is "[n]evertheless" evidence of design to conceal).

In this respect, our holding is consistent with the familiar and well-established principle of criminal law that "[i]ntent is a factual matter that may be proved by circumstantial evidence" (citation omitted).  Commonwealth v. Walters, 472 Mass. 680, 693 (2015).  See Commonwealth v. Ellis, 356 Mass. 574, 578-579 (1970) ("A person's . . . intent . . . is

a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had, and frequently is had, to proof by inference from all the facts and circumstances developed at the trial" [citation omitted]); Commonwealth v. Hayes, 114 Mass. 282, 285 (1873) ("intent may, and generally must, be proved by circumstantial evidence").

Moreover, to be relevant and admissible, there is no requirement that an individual piece of circumstantial evidence be sufficient, standing alone, to prove a material fact. See Commonwealth v. Pickering, 479 Mass. 589, 597 (2018); Commonwealth v. Gerhardt, 477 Mass. 775, 782 (2017); Commonwealth v. Sicari, 434 Mass. 732, 750 (2001), cert. denied, 534 U.S. 1142 (2002). "An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered" (footnote omitted). 1 McCormick on Evidence § 185, at 999 (K.S. Broun ed., 7th ed. 2013). "A brick is not a wall." Id. at 1000.

The question we must consider is whether the circumstantial evidence in this case, taken together, was sufficient to permit a rational jury to conclude that an animating purpose of the

alleged money-laundering deposits was to conceal a listed

attribute of the funds.[15]  We conclude that it was.[16]

In Garcia-Emanuel, 14 F.3d at 1475, the United States Court

of Appeals for the Tenth Circuit noted that "a variety of types

of evidence have been cited by this and other circuits as

supportive of evidence of intent to disguise or conceal,"

including

> "statements by a defendant probative of intent to
> conceal; unusual secrecy surrounding the
> transaction; structuring the transaction in a way to avoid
> attention; depositing illegal profits in the bank account
> of a legitimate business; highly irregular features of the
> transaction; using third parties to conceal the real
> owner; a series of unusual financial moves cumulating in
> the transaction; or expert testimony on practices of
> criminals" (footnotes omitted).

Id. at 1475-1476.  Here, as noted above, the Commonwealth's case

included at least three of the categories of evidence typically

---

[15] The defendant originally challenged the Commonwealth's proof on multiple elements of the crime of money laundering. However, the defendant conceded certain points in her reply brief and indicated at oral argument that the only remaining question was whether the evidence was sufficient to show a design to conceal.  To the extent the defendant continues to press any of the other arguments made in her opening brief, we reject them.

[16] While the evidence here was legally sufficient to prove concealment money laundering under G. L. c. 267A, § 2 (2) (ii) (A), it could well be described as overwhelming with respect to a charge of receiving stolen property over $250, in violation of G. L. c. 266, § 60.  Here, the Commonwealth apparently inadvertently charged the defendant with receiving stolen property of $250 or less, rather than the more appropriate charge of receiving stolen property over $250.

associated with concealment money laundering:  (1) "statements by a defendant probative of intent to conceal"; (2) "structuring the transaction in a way to avoid attention"; and (3) "using third parties to conceal the real owner".[17]  Id.  We conclude that this evidence, taken together, was sufficient to establish

---

[17] The defendant resists the characterization of her role as that of a third party to the underlying crime and argues that her straightforward, and easily traceable, deposits of the money into an account bearing her name constituted "transparent division or deposit" of the proceeds of their joint crime, not money laundering.  United States v. Adefehinti, 510 F.3d 319, 322 (D.C. Cir. 2007).  See United States v. Stephenson, 183 F.3d 110, 120 (2d Cir.), cert. denied, 528 U.S. 1013 (1999) (gathering cases in support of proposition that "[s]ubsection [i] of the money laundering statute does not criminalize the mere spending of proceeds of specified unlawful activity").  However, based on this record, a rational jury could have concluded that it was Kimell who stole the cash from her mother and stepfather, and that Kimell then gave some of the cash to the defendant to deposit, in an attempt to conceal the source (or another listed attribute) of the funds.  The fact that the defendant did not conceal her own identity when making the third-party deposit does not defeat the Commonwealth's claim that the transaction was designed to conceal a listed attribute of the funds in violation of the money laundering statute.  See United States v. Tekle, 329 F.3d 1108, 1114 (9th Cir.), cert. denied, 540 U.S. 960 (2003), citing Hollenback v. United States, 987 F.2d 1272, 1278-1280 (7th Cir. 1993), and United States v. Lovett, 964 F.2d 1029, 1034 (10th Cir.), cert. denied, 506 U.S. 85 (1992) ("The necessary concealment . . . is that of the source of the funds, not the identity of the money-launderer").  See also United States v. Hall, 434 F.3d 42, 50-51 (1st Cir. 2006) ("The [money laundering] statute criminalizes conduct designed to conceal or disguise the source of the drug proceeds even if the defendant does not conceal his own identity in the process"; collecting cases).  To be sure, the defendant's efforts at concealment in this case did not succeed.  But the relevant inquiry is one of purpose, not merely effect.  Cuellar, 553 U.S. at 567.

the "designed . . . [to] conceal" element under G. L. c. 267A, § 2 (2) (ii) (A).

Our conclusion finds support in cases from several Federal Courts of Appeals that were decided on similar facts.  See Brown, 553 F.3d at 787 (evidence sufficient for concealment money laundering where defendant engaged in cash transactions, most of which were below $10,000, "to avoid setting off any reporting requirements"); United States v. Hall, 434 F.3d 42, 50 (1st Cir. 2006) (evidence sufficient to support concealment money laundering counts where defendant made loans to third parties, including his girlfriend, falsely representing that money came from inheritance, and in one instance, stating purpose of loan was to "get some of his money more legal"); Willey, 57 F.3d at 1387 (evidence sufficient to support concealment money laundering counts where defendant used transfers to and among third parties, including his girlfriend, to "move[] the money further away from [himself]").

Finally, we reject the defendant's argument that the rule of lenity requires us to rule in her favor.  The rule of lenity "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." Commonwealth v. Roucoulet, 413 Mass. 647, 652-653 (1992), quoting Edgartown v. State Ethics Comm'n, 391 Mass. 83, 90 (1984).  We find no ambiguity to resolve in the

terms of G. L. c. 267A, § 2 (2) (ii) (A), which closely track the cognate provisions of the long-standing and much interpreted Federal money laundering statute.

Conclusion.  For these reasons, we conclude that the evidence was sufficient to support the defendant's money laundering conviction.

Judgment affirmed.